**Francis E. WEAVER, Petitioner,**

v.

**The PENNSYLVANIA DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 4, 2003.

Decided July 29, 2003.

Francis E. Weaver, petitioner, pro se.

Michael J. McGovern, Camp Hill, for respondent.

Before McGINLEY, J., SIMPSON, J., and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

Seeking return of confiscated artwork and art supplies and the enforcement of written Department of Corrections (DOC) policies, Francis E. Weaver (Petitioner), representing himself, filed a petition for review in the nature of mandamus. DOC filed preliminary objections which are currently before the Court. We sustain the preliminary objections and dismiss the petition.

Petitioner is an inmate in a state correctional facility serving a life sentence without the possibility of parole. During a random search of Petitioner's cell, two prison guards confiscated a copy of the DOC Code of Ethics, art supplies, handmade greeting cards, and drawings. After failed informal requests for return of the items, Petitioner filed a formal grievance. It was denied. Petitioner appealed the denial to the facility Superintendent, who ordered return of the DOC Code of Ethics only.

Petitioner appealed to the DOC Secretary's Office of Inmate Grievances and Appeals. Approximately 130 days later Petitioner received a response upholding the Superintendent's decision.

Petitioner seeks mandamus to compel DOC to return his confiscated artwork and art supplies. To support his right to the artwork, he relies on a written DOC policy for inmate recreational and therapeutic activities. DOC Policy 7.8.1. In addition, Petitioner relies on another written policy to support his claim that he has a right to the issuance of a decision on his appeal within 30 working days.

DOC filed preliminary objections challenging jurisdiction. Also, DOC questions whether Petitioner states a claim upon which relief can be granted.

In reviewing preliminary objections in the nature of a demurrer, we must accept as true all well pled facts, which are relevant and material, as well as all inferences reasonably deducible therefrom. *Cohen v. City of Philadelphia*, 806 A.2d 905 (Pa. Cmwlth.2002).

## I.

On the question of jurisdiction, *Bronson v. Cent. Office Review Comm.*, 554 Pa. 317, 721 A.2d 357 (1998) is instructive. In *Bronson* our Supreme Court addressed confiscation of inmate civilian clothing. The Court held the Commonwealth Court does not have *appellate* jurisdiction over inmate appeals of decisions by intra-prison disciplinary tribunals, such as grievance and misconduct appeals. The Court said:

> [I]nternal prison operations are more properly left to the legislative and executive branches, and ... prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference. *See Robson*, 420 A.2d at 12 (citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). We agree. Unlike the criminal trial and appeals process where a defendant is accorded the full spectrum of rights and protections guar-

anteed by the state and federal constitutions, and which is necessarily within the ambit of the judiciary, the procedures for pursuing inmate grievances and misconduct appeals are a matter of internal prison administration and the "full panoply of rights due a defendant in a criminal prosecution is not necessary in a prison disciplinary proceeding...." *Robson*, 420 A.2d at 12 (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

*Id.* at 321, 721 A.2d at 358–59.

Also, the Supreme Court held the Commonwealth Court usually does not have *original* jurisdiction over an inmate's petition for review after a grievance proceeding. The Court held that original jurisdiction was not available "in a case not involving constitutional rights not limited by the [DOC]." *Id.* at 322–23, 721 A.2d at 359. Noting that prison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens, the Court concluded that an attempt to color the confiscation as a constitutional deprivation would fail. "Unless 'an inmate can identify a personal or property interest ... not limited by [DOC] regulations and which has been affected by a final decision of the department' the decision is not an adjudication subject to the court's review." *Id.* at 323, 721 A.2d at 359 (citation omitted).

Here Petitioner claims no loss of constitutional rights. He concedes in his brief that "there are no specific Constitutional Right [sic] to the possession of artwork and art materials...." Petitioner's Brief in Opposition to Preliminary Objections at 5. Additionally, there are written DOC directives limiting inmates' personal property. *Bronson, citing* DC–ADM 815. Accordingly, Petitioner fails to state a case

involving constitutional rights not limited by DOC within our original jurisdiction.

## II.

Moreover, Petitioner fails to state any claim based on DOC policies. In *Small v. Horn*, 554 Pa. 600, 722 A.2d 664 (1998), our Supreme Court addressed the revocation of an inmate's permission to wear civilian clothing. In rejecting a claim that DOC bulletins created an enforceable right, the Court said:

> Because of the unique nature and requirements of the prison setting, imprisonment "carries with it the circumscription or loss of many significant rights … to accommodate a myriad of institutional needs … chief among which is internal security." *Hudson v. Palmer*, 468 U.S. 517, 524, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984). Accordingly, the Department must enforce reasonable rules of internal prison management to ensure public safety and prison security. These rules must be modified as conditions change, different security needs arise, and experience brings to light weaknesses in current security measures.

*Id.* at 611, 722 A.2d at 669—70. The Court concluded that issuance of DOC bulletins was not an adjudication. *Id.* at 614, 722 A.2d at 671.

In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court refocused its analysis of whether prison regulations give rise to enforceable rights. The Court shifted the focus of the liberty interest inquiry from the language of the particular regulation to the nature of the deprivation. *Id.* at 481—84, 115 S.Ct. 2293.

In *Sandin*, the Court considered whether liberty interests were created by prison regulations relating to disciplinary confinement. The Court determined that a state-created liberty interest could arise only when a prison's action imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. 2293. The Court went on to point out that the punishment of incarcerated prisoners serves the aim of effectuating prison management and prisoner rehabilitative goals and that discipline by prison officials in response to misconduct is within the expected parameters of the prisoner's sentence. The Court found that the prisoner's placement in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Here, Petitioner does not allege, nor can he allege, the removal of artwork from his cell imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*. Restrictions on the contents of a cell are included among the ordinary incidents of prison life. *Bronson*. Also, Petitioner does not aver, nor can he aver, that his sentence was lengthened. *Sandin*. Thus, Petitioner fails to state a claim of right arising from DOC policy.

This approach is consistent with several older federal court decisions regarding the impact of written corrections policies. In *Jones/Seymour v. LeFebvre*, 781 F.Supp. 355 (E.D.Pa.1991), *aff'd*, 961 F.2d 1567 (3d. Cir.1992), a policy which specifically stated that it did "not create rights in any person nor should it be interpreted or implied in such a manner as to abridge the rights of any individual" did not create any enforceable rights in a Pennsylvania state prison inmate. *Id.* at 359. Similarly, in *Williams v. Kyler*, 680 F.Supp. 172 (M.D.Pa.1986), *aff'd*, 845 F.2d 1019 (3d Cir.1988), "disclaimer" language in a policy supported

the conclusion that no enforceable rights were created by the policy.

Here, the written policy on which Petitioner relies specifically provides as follows:

> VIII. RIGHTS UNDER THIS POLICY
>
> This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purposes of the policies of the Department of Corrections.

DOC Policy 7.8.1. The disclaimer language in the written policy at issue is identical to that found in *Jones/Seymour* and in *Jackson*. To the extent that the policy language is dispositive, we agree that the disclaimer is sufficient to dispel any reasonable expectation that an enforceable right is created by the DOC policy.

Likewise, Petitioner's request for mandamus to compel more timely decisions from the Secretary's Office of Inmate Grievances and Appeals fails to state a claim. The Petitioner does not, and cannot, aver that a delay in rendering a decision imposes an atypical and significant hardship on a life inmate in relation to the ordinary incidents of prison life. *Sandin.* See also *Jamal v. Dep't of Corr.*, 121 Pa. Cmwlth. 42, 549 A.2d 1369 (1988) (mandamus does not lie to compel more prompt ruling on publications coming into prison as prescribed by DOC directives).

In summary, we conclude that Petitioner has not stated and cannot state a claim upon which relief can be granted in our original jurisdiction. Accordingly, we sustain the preliminary objections and dismiss the petition with prejudice.[1]

### *ORDER*

AND NOW, this 29th day of July, 2003, the preliminary objections of the Pennsylvania Department of Corrections are sustained, and the petition for review in the nature of mandamus is dismissed with prejudice.

---

1. As a result of our ruling on the demurrer we need not reach Petitioner's request to amend his petition to add demands for injunctive and monetary relief.