## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Brian Shore, | : | |
|            Petitioner | : | |
| | : | No. 653 M.D. 2016 |
|     v. | : | |
| | : | Submitted: March 31, 2017 |
| Pennsylvania Department of | : | |
| Corrections, | : | |
|            Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE McCULLOUGH                       FILED: July 31, 2017


Before the Court in our original jurisdiction are the preliminary objections filed by the Department of Corrections (Department) to the petition for review (Petition) filed by Brian Shore. We grant the Department's objections and dismiss Shore's Petition.


### Background

On November 21, 2016, Shore, an inmate at the State Correctional Institution at Albion (SCI-Albion), filed his Petition against the Department, alleging that the procedure used by prison officials to deny him access to photographs sent through the mail was unconstitutional. Specifically, Shore averred that on June 14, 2016, SCI-Albion's mailroom issued him three notification forms, advising that a

total of forty-three photographs were being withheld for violating section 3.3.c of Department policy DC-ADM 803, currently promulgated and codified at 37 Pa.Code §93.2(g)(1)(iv), both of which prohibit inmates from possessing publications containing "nudity."[1] (Petition, ¶¶1, 5-6.)

Shore stated that, after receiving the notifications, he initiated the Department's internal grievance procedure on June 20, 2016,[2] claiming that the photographs did not meet the definition of "nudity" and therefore SCI-Albion could not confiscate them. On August 18, 2016, SCI-Albion's Superintendent reviewed Shore's grievances and denied them, finding that the photos contained "nudity and exposed genitalia." (Petition, ¶5) (quoting Ex. C). On August 29, 2016, Shore appealed to the Office of Policy, Grants, and Legislative Affairs. On October 17, 2016, the Department's Chief Grievance Officer denied Shore's final appeal in the grievance process, concluding that contrary to Shore's contention, the photographs showed "nudity in the form of bare breasts, vaginal and anal areas." (Petition, ¶6) (quoting Ex. D).

In the Petition, Shore argues that the photographs are outside the scope of DC-ADM 803 and that the grievance adjudicators denied him possession based upon their own "individualized benchmarks of morality." (Petition, ¶12). Shore

---

[1] According to the regulation, "nudity" is defined as "[t]he showing of the human male or female genitals, pubic area or buttocks with less than a fully opaque covering or the showing of the female breast with less than a fully opaque covering of any portion below the top of the nipple, or the depiction of covered male genitals in a discernible turgid state." 37 Pa.Code §93.2(i). However, "publications containing nudity . . . may be permitted if the material has artistic, educational or medical value." 37 Pa.Code §93.2(h).

[2] *See* DC-ADM 803§3.4.a-b; DC-ADM 804 VI (providing for an appeal of the initial determination and notification to the superintendent's office to a designee known as the "Facility Manager" (Superintendent), and then a further appeal to the Department's "Office of Policy, Grants, and Legislative Affairs" to a grievance officer (Chief Grievance Officer) for a "final" decision).

further contends that the time in which it took the Superintendent and the Chief Grievance Officer to decide his grievances, 56 and 35 days, respectively, contravened the 15-day and 30-day time limitations in DC-ADM 804. Finally, Shore asserts that the Department's procedure to review incoming mail is "inherently unfair" because, during the initial review and grievance process, he was not "permitted to physically view the publication," i.e., the photographs. (Petition, ¶¶8-10, 13).

Based upon these allegations, Shore asserts constitutional claims against the Department "as the sole respondent in this case," (Petition, ¶3), opting not to sue any employees in either their individual or official capacity. In terms of his cause of action, Shore maintains that the Department violated his First Amendment and Fourteenth Amendment procedural due process rights. For relief, he seeks a decree stating that the Department's procedure to review incoming mail is unconstitutional; compensatory damages in the form of losses incurred; an order in mandamus requiring SCI-Albion to return the photographs; and an order requiring the Department to implement a new grievance procedure in which an inmate is afforded the opportunity "to physically review the publication . . . and present oral argument." *Id.* at Wherefore Clause, ¶¶1-4.

On December 5, 2016, the Department filed preliminary objections in the nature of a demurrer and Shore thereafter filed a reply. The parties then filed briefs in support of and opposition to the preliminary objections and the matter is now ripe for disposition.

## Discussion

In ruling on preliminary objections in the nature of a demurrer, the Court must accept as true all well-pleaded material facts and all inferences reasonably

deducible therefrom. *Barndt v. Pennsylvania Department of Corrections*, 902 A.2d 589, 592 (Pa. Cmwlth. 2006). However, the Court is not required to accept as true legal conclusions, unwarranted factual inferences, argumentative allegations, or expressions of opinion. *Armstrong County Memorial Hospital v. Department of Public Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013) (en banc).

## First Amendment

In his filings, Shore contends that he has alleged a viable First Amendment claim because the photographs do not depict nudity. Although Shore concedes, somewhat ambiguously, that the case law holds that DC-ADM 803 and 37 Pa.Code §93.2 do not run afoul of the First Amendment, he contends that he has "a constitutional right to receive non-nude photographs sent to him," (Shore's brief at 9), and claims that the Superintendent and the Chief Grievance Officer erred, as a matter of fact, in denying his grievances.

"[T]he First Amendment to the United States Constitution has long been interpreted by the courts as including a general right to communicate by mail." *Bussinger v. Department of Corrections*, 29 A.3d 79, 84 (Pa. Cmwlth. 2011). This right, however, does not come without qualifications and circumscription, especially in the prison context. To be sure, inmates do not have an absolute right to acquire and keep any property they desire and the Department is permitted to deprive inmates of property if doing so is reasonably related to a legitimate penological interest. *Thornburgh v. Abbott,* 490 U.S. 401, 414-18 (1989); *see Iseley v. Beard*, 841 A.2d 168, 174 (Pa. Cmwlth. 2004).

In *Brittain v. Beard*, 974 A.2d 479 (Pa. 2009), the Pennsylvania Supreme Court determined whether the Department provided sufficient penological

4

justification for then DC-ADM 803-1 to withstand First Amendment scrutiny. Like current DC-ADM 803, then DC-ADM 803-1 prohibited inmates from possessing "nudity" and defined that term in language virtually identical to the present definition contained in 37 Pa.Code §93.2(i).[3] The petitioner in *Brittain* argued that "DC-ADM 803-1 improperly prohibited inmates from possessing materials depicting mere nudity, including artwork, drawings, photographs, and Playboy Magazine, without any legitimate penological purpose." 974 A.2d at 481. In response, the Department set forth what it contended to be a valid, rational connection between the policy and legitimate governmental interests. Specifically, the Department asserted that the prohibition on pornographic material serves to foster the rehabilitation of inmates; is consistent with inmate treatment objectives; discourages inmates from objectifying persons; and minimizes the risk of inappropriate, sexual behavior. Ultimately, our Supreme Court concluded that these reasons advanced legitimate penological interests, and because the petitioner failed to prove that the proffered reasons and goals were unreasonable, upheld the constitutionality of DC-ADM 803-1 against a First Amendment challenge.

In *Smith v. Beard*, 26 A.3d 551 (Pa. Cmwlth. 2011), the petitioner filed a petition for review in the nature of a class action challenging the validity of current DC-ADM 803 and its promulgated form as a regulation located at 37 Pa.Code §93.2. The petitioner in *Smith* contended that the policy was "overbroad and vague in violation of his First and Fourteenth Amendment rights" and "discriminatorily

---

[3] Under then DC-ADM 803, "nudity" was defined as "showing the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or showing the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple (exposure through 'see through' materials is considered nudity for purposes of this definition)." *Brittain*, 974 A.2d at 480 (citation omitted).

permits commercial pornography in a piecemeal fashion by permitting magazines and books such as Maxim, Curves, and the Bible, but denying access to Playboy . . . ." 26 A.3d at 555. The petitioner also averred that Playboy magazine possesses serious literary, political, and artistic value and that prohibiting possession of that publication is not reasonably related to any goal of rehabilitation. This Court, however, disagreed. Relying predominately on *Brittain*, we concluded that the petitioner's allegations "do not include the specific facts necessary to disprove the penological interests asserted by the Department," 26 A.3d at 559, and reaffirmed that the policy's ban on the possession of nudity did not run afoul of the First Amendment.

Pursuant to *Brittain* and *Smith*, DC-ADM 803 and 37 Pa.Code §93.2 are facially constitutional for purposes of the First Amendment and, like the petitioners in those cases, Shore does not allege any specific facts that tend to undermine the Department's legitimate penological interests. In his answer to the Department's preliminary objections, Shore candidly admits that the policy "rightly restricts inmates' First Amendment right to receive and possess nudity," but contends that "DC-ADM 803 does not limit inmates' First Amendment right to receive and possess non-nude photographs . . . ." (Answer, ¶4.) In this vein, Shore argues that he possesses a First Amendment right to receive non-nude photographs; the photographs do not contain nudity; and in an apparent backtrack from the allegations in his Petition, "highlights his continued right . . . to receive and possess non-nude photographs exclusively to evidence the cognizable [nature] of his due process claim . . . ." *Id.* ¶6.

While it is unclear whether Shore has abandoned a claim based on First Amendment principles, he generally advances the argument that the Chief Grievance Officer erred in determining that the photographs depict nudity as a matter of fact and

6

thereby applied DC-ADM-803 and 37 Pa.Code §93.2 in an unconstitutional manner. (*See* Shore's brief at 10-11.)[4]  However, to the extent Shore makes such a contention, the case law dictates that this Court lacks jurisdiction to review the factual findings and/or legal conclusions of the Chief Grievance Officer with respect to her denial of Shore's grievances.  *See, e.g., Bronson v. Central Office Review Committee*, 721 A.2d 357 (Pa. 1998); *Xavier v. Department of Corrections*, (Pa. Cmwlth., No. 331 M.D. 2016, filed February 8, 2017) (unreported).

In *Bronson*, our Supreme Court decided whether this Court has jurisdiction to review the final decisions of the then Central Office Review Committee (Committee) – now designated as the Chief Grievance Officer – denying inmate grievances under the procedure in DC-ADM 804.  In that case, the petitioner filed grievances asserting that the Department unlawfully seized and destroyed personal property, specifically clothing, and after the Committee denied the grievances, the petitioner filed a petition for review in this Court.  Eventually, the case made its way to our Supreme Court, which assessed both this Court's appellate and original jurisdiction to entertain legal issues emanating from a grievance denial.

In determining that we lacked appellate jurisdiction to review this type of a decision, the Supreme Court in *Bronson* emphasized that, when resolving grievances, the Committee is "purely internal to the Department . . . and does not function on the level of a government agency."  721 A.2d at 358.  As the Court expounded:

---

[4] In Shore's words:  "It follows that if an inmate is sent a photograph of a person . . . and the [Department] repeatedly claims the photo contains nudity when it does not . . . the [Department's] explicit refusal to abide by its own policy and . . . outright deceit concerning an unlimited First Amendment right . . . effectively amounts to a complain[t] primarily claiming that the [Department] lied concerning permissible non-nude photographs it seized from Shore."  (Shore's brief at 10.)

7

> [I]nternal prison operations are more properly left to the legislative and executive branches and . . . prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference . . . .
>
> Unlike the criminal trial and appeals process where a defendant is accorded the full spectrum of rights and protections guaranteed by the state and federal constitutions, and which is necessarily within the ambit of the judiciary, the procedures for pursuing inmate grievances and misconduct appeals are a matter of internal prison administration . . . .

*Id.* at 358-59. For these reasons, the Supreme Court concluded that this Court "does not have appellate jurisdiction . . . over inmate appeals of decisions by intra-prison disciplinary tribunals." *Id.* at 359.

With respect to our original jurisdiction over a grievance determination, the *Bronson* Court explained:

> Even if [the petitioner] had invoked the court's original jurisdiction by attempting to color the confiscation of his clothing as a violation of his protected constitutional property rights, his claim would fail. Prison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens . . . . Unless an inmate can identify a personal or property interest . . . not limited by Department regulations and which has been affected by a final decision of the department the decision is not an adjudication subject to the court's review.
>
> Prison inmates do not have the right to possess civilian clothing. Indeed, department directives specify exactly what personal property may be possessed or purchased either in the prison commissary or through outside sources. In light of the limitations placed on inmate possession of personal property by the Department, [petitioner's] claim that his protected constitutional rights have been violated fails.

721 A.2d at 359-60 (citation and internal quotation marks omitted).

8

Recently, in the unreported case of *Xavier*, this Court granted the Department's preliminary objections and dismissed an inmate's petition for review alleging, among other claims, that the Department violated his First Amendment rights in confiscating photographs and flyers that the Chief Grievance Officer determined contained nudity. The petitioner in that case alleged that "the photographs and flyers did not contain nudity and thus did not violate DC-ADM 803." *Id.*, slip op. at 2. The petitioner further asserted that the adjudicators in the grievance process "do not adhere to the language of DC-ADM 803, but impose their own 'benchmarks of morality' in determining whether incoming materials comply with Department policy." *Id.* (citation omitted).

As an initial matter, this Court in *Xavier* noted that the inmate was effectively "requesting review of the Department's internal administrative review of the regulation of inmate property, i.e., the denial of arguably nude photographs and flyers," slip. op. at 3, and concluded that under *Bronson*, we lacked appellate jurisdiction to review the petitioner's claims. This Court then concluded that pursuant to *Bronson*, we did not possess original jurisdiction over the matter either, providing the following rationale:

> Here, the Department regulations limit an inmate's right to send or receive correspondence that contains obscene material while incarcerated. DC-ADM 803. In *Brittain* . . . [the] Supreme Court determined that prison administrators are owed substantial deference to their professional judgment regarding policies that serve legitimate goals of the correctional system, and upheld the Department's policy prohibiting prisoners from possessing obscene material.
>
> Further, the Department's regulations as codified at 37 Pa. Code §93.2(g), provide that incoming publications containing obscene material may not be received by inmates. This Court upheld those regulations in *Payne v.*

9

*Commonwealth, Department of Corrections*, 813 A.2d 918 (Pa. Cmwlth. 2002) . . . . Thus, because this is an internal operating procedure and the Department has placed limitations on the material inmates can receive, this Court does not have original jurisdiction.

*Xavier*, slip op. at 4-5.

Per his Petition and brief, Shore argues that DC-ADM 803 does not ban non-nude photographs; the Chief Grievance Officer utilized "individualized benchmarks of morality" to make her determinations, (Petition, ¶12); and the photographs did not depict nudity as a matter of fact. In accordance with *Xavier*, the Court concludes that because DC-ADM 803 curtails any property interest that Shore may have in the photographs, and Shore's Petition essentially disputes the applicability of the policy on a factual level, the Court lacks jurisdiction to entertain Shore's claim insofar as it can be construed to advance an as-applied constitutional challenge.[5] Quite simply, under *Xavier*'s application of *Bronson* to DC-ADM 803, the decisions of the Chief Grievance Officer as to whether a photograph depicts nudity are not reviewable in either the Court's appellate or original jurisdiction.

Therefore, because Shore has failed to state a claim upon which relief can be granted, the Court grants the Department's preliminary objections and dismisses his First Amendment claim.

---

[5] Although unreported opinions are not binding precedent, the panel decision in *Xavier* addressed a factual situation that is indistinguishable from the present matter and correctly applied the law of *Bronson* to that factual situation. As such, the Court finds that *Xavier* provides strong guidance and constitutes persuasive authority in resolving the case at hand and will adopt and follow that case's reasoning. *See* Commonwealth Court's Internal Operating Procedures Section 414(a), 210 Pa.Code §69.414(a).

## Procedural Due Process

Shore argues that he alleged facts sufficient to establish that his procedural due process rights were violated. Shore posits that the Department deprived him of his property by confiscating non-nude photographs absent an adequate procedure through which he would be permitted to view the photographs first-hand and make meaningful arguments before an impartial tribunal. According to Shore, "[i]t is inherently unfair to expect an inmate to properly argue on appeal reasons he should be awarded a rejected publication without being permitted to physically view the publication," (Petition, ¶13), and he contends that the Department must adopt an "in camera" style proceeding with him present to satisfy the demands of due process.

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, §1. To maintain a due process challenge, a party must initially establish the deprivation of a protected liberty or property interest. *Miller v. Workers' Compensation Appeal Board (Pavex, Inc.)*, 918 A.2d 809, 812 (Pa. Cmwlth. 2007). If, and only if, the party establishes the deprivation of a protected interest, will the Court consider what type of procedural mechanism is required to fulfill due process. *Id.*

For present purposes, the Court assumes that the Department deprived Shore of a legitimate property interest and turns to the issue of whether sufficient procedural protections were available.

"The amount of process due depends on the context presented." *Silo v. Ridge*, 728 A.2d 394, 399 (Pa. Cmwlth. 1999). It is now a bedrock principle that post-deprivation remedies satisfy the due process clause where the situation dictates

11

that the State take immediate action or it is impracticable to provide any meaningful pre-deprivation process. *Parratt v. Taylor*, 451 U.S. 527, 539 (1981); *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 421 (3d Cir. 2000). When a prison official confiscates a prisoner's property in an allegedly unauthorized way, whether it be negligently or intentionally, due process requires only the existence of an adequate post-deprivation remedy because it is not feasible for a prison to provide a hearing prior to taking property that is perceived to be contraband or against prison regulations. *See Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984); *Parratt*, 451 U.S. at 541.

In addressing the issue, the courts have repeatedly held that inmate grievance systems are an adequate post-deprivation remedy, *see, e.g., Tillman*, 221 F.3d at 422, and this includes the Department's tiered grievance procedure outlined in DC-ADM 804. *Mattis v. Dohman*, 260 F. App'x 458, 461 (3d Cir. 2008); *McEachin v. Beard*, 319 F. Supp. 2d 510, 514-15 (E.D. Pa. 2004). In a string of unreported decisions, this Court has concluded that the Department's grievance procedure in DC-ADM 804 is a constitutionally sufficient remedy with respect to inmates' claims that the Department unlawfully withheld and/or confiscated personal property. *See, e.g., Bullock v. Department of Corrections*, (Pa. Cmwlth., No. 241 M.D. 2016, filed May 12, 2017) (unreported), slip op. at 9 (citing, *inter alia*, *Brown v. Wetzel* (Pa. Cmwlth. No. 318 M.D. 2015, filed September 9, 2016) (unreported); *Fennell v. N.D. Goss* (Pa. Cmwlth., No. 1198 C.D. 2015, filed February 5, 2016) (unreported)).

The primary purpose and benefit of the grievance procedure is to allow the Department "to address complaints about the program it administers before being subjected to suit." *Jones v. Bock*, 549 U.S 199, 218 (2007) (citation omitted). Prior to filing a complaint alleging violation of federal rights, an inmate must exhaust the

administrative grievance system in a complete and "proper" manner, and this necessitates compliance with "critical procedural rules." *Kittrell v. Watson*, 88 A.3d 1091, 1095 (Pa. Cmwlth. 2014) (citation omitted). In particular, "a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citation and internal quotation marks omitted). Consequently, there is no due process violation when the inmate fails to pursue a particular channel in the grievance procedure that could potentially rectify a procedural irregularity or inadequacy occurring within the grievance procedure itself. *See Alvin v. Suzuki*, 227 F.3d 107, 116-19 (3d Cir. 2000).

In relevant part, the text of DC-ADM 804 provides that in a grievance, "[t]he inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law." DC-ADM 804 §1.A.11.c. Pursuant to section 1 of DC-ADM 804, such claims involve "[a]ny concern disputing [the] initial review responses, appeals decisions, or actions of staff members who rendered those decisions . . . ." DC-ADM 804 §1.A.15. The pertinent provisions of section 2, in turn, authorize both the Superintendent and the Chief Grievance Officer to remand to the adjudicator below "for further investigation/reconsideration" and/or "further review." DC-ADM 804 §§2.A.2.d(5), B.2(e)(4), B.2(g)(3).

Based on the facts averred in the Petition, the Department confiscated the photographs upon inspection and provided Shore with notifications that the photographs were seized for violating the Department's policy prohibiting nudity. Although Shore alleges that he never viewed the photographs first-hand, there is nothing in DC-ADM 804 that would prohibit Shore from requesting that he

13

personally inspect the photographs during the grievance procedure. Arguably, a plain reading of DC-ADM 804 indicates that an inmate's request to review photographs, a claim that a grievance adjudicator erred in failing to permit it, as well as a remand to allow it, all fall within the purview of the grievance appeal procedure. Pursuant to the principles espoused in the above case law, Shore cannot sit idly by during the grievance process and now complain that the procedure is deficient for a reason that could very well have been proven to be no reason had he taken full advantage of the procedure.

In other words, Shore cannot argue that the grievance system provides inadequate process on the ground that he was not "permitted to physically view the publications," (Petition, ¶8), if he never asked to review the photographs. *See also Zeman v. Borough of Canonsburg*, 223 A.2d 728, 729-730 (Pa. 1966). This is because DC-ADM 804 is crafted in language that is apparently broad enough to allow the issue to be heard and the relief granted and, as a result, the procedure is presumptively both meaningful and adequate. Although Shore was obligated under the rules to raise all available claims of error, the exhibits attached to his Petition reflect that he did not request to view the photographs personally. Nor did he claim that such a request was explicitly or implicitly rejected by the language of DC-ADM 804 or an adjudicator's decision. The end result is that the Department was deprived of an opportunity to apply DC-ADM 804 to the facts of this case and/or construe it in a manner that would correct the alleged deficiency.

Accepting the allegations in the Petition as true, the Court concludes that Shore has not alleged a concrete, palpable defect in the procedural mechanism of DC-ADM 804. Instead, absent any prohibitory language in the policy, Shore can only speculate as to whether the Chief Grievance Officer would apply DC-ADM 804 to

14

forbid him from viewing the photographs. The averments in the Petition otherwise establish that Shore was afforded meaningful opportunities to respond, submitted written objections throughout the grievance process, and received written decisions from three different adjudicators within the Department. Because Shore's "mere dissatisfaction with the outcome . . . does not equate to a denial of due process," *Fennell,* slip op. at 4 (quotation marks omitted), his due process claim fails as a matter of law. "This Court has declared that the Department's grievance procedure is a constitutionally-adequate and legal post-deprivation remedy," *Bullock*, slip op. at 9 (citations omitted), and this general proposition remains true here.[6]

---

[6] Even if it is assumed that the grievance procedure were constitutionally inadequate, Shore may have an available post-deprivation remedy in the form of a state tort law action against the Department to obtain monetary damages for destruction of the photographs or return of the photographs if they were non-contraband personal property. *See, e.g., Hawkins v. Coleman Hall, C.C.F.*, 453 F. App'x 208, 211 (3d Cir. 2011) (concluding that an inmate's ability to file a state law tort action to seek relief for the alleged deprivation of personal property constitutes an adequate post-deprivation remedy."); *Austin v. Lehman*, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (same). In Pennsylvania, a tort law remedy is available for the possession and/or destruction of non-contraband personal property by virtue of section 8522(b)(3) of what is commonly referred to as the Sovereign Immunity Act, which waives immunity for negligent acts concerning "[t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including . . . property of persons held by a Commonwealth agency[.]" 42 Pa.C.S. §8522(b)(3); *see Williams v. Stickman*, 917 A.2d 915, 917-18 (Pa. Cmwlth. 2007).

Although this Court has held in unpublished decisions that an inmate may not assert the intentional tort of conversion against employees of the Department, at least to the extent the claim alleges willful misconduct, *see*, *e.g.*, *Palmer v. Sergeant* (Pa. Cmwlth., No. 2451 C.D. 2015, filed May 5, 2016) (unreported), slip op. at 9, conversion does not always "rest on proof of specific intent to commit a wrong." *LB Foster Co. v. Charles Caracciolo Steel and Metal Yard, Inc.*, 777 A.2d 1090, 1095-1096 (Pa. Super. 2001). Instead, the tort may be based on "good faith" actions, *id.*, as well "as [the] loss-occasioning carelessness . . . resulting from [a] defendant's negligence for which damages may be recovered," *Egan v. Smith*, 189 A. 488, 489 (Pa. 1937). In this regard, it is possible that Shore has an adequate post-deprivation tort remedy against the Department's employees for the negligent possession and/or destruction of the photographs. *See id.*; *Wolfe v. Pennsylvania Co. for Insurance on Lives and Granting Annuities*, 185 A. 292, 293 (Pa. 1936) (recognizing the concept of "negligent conversion"); *Bank v. City of Philadelphia*, 991 F.Supp.2d
**(Footnote continued on next page…)**

As a sub-part to his due process claim, Shore contends that the Superintendent and Chief Grievance Officer violated the terms of DC-ADM 804 because they did not issue decisions within the designated time frame.

"[A] state may create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures." *Hewitt v. Helms*, 459 U.S. 460, 469 (1983). A state regulation transcends a mere procedural guideline when it uses "language of an unmistakable character," i.e., when it contains "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates." *Id.* at 471-72. Further, "[w]hen an individual alleges a protected property interest in the receipt of a state created benefit, the individual must establish more than a mere expectation to it; the individual must demonstrate an actual entitlement to it." *Miller*, 918 A.2d at 812.

In general, allegations that the Department failed to follow its regulations or internal policies cannot support a claim based upon a vested right or duty because these administrative rules and regulations, unlike statutory provisions, usually do not create rights in prison inmates. *Tindell v. Department of Corrections*, 87 A.3d 1029, 1035 (Pa. Cmwlth. 2014); *Bullock v. Horn*, 720 A.2d 1079, 1082 n.6 (Pa. Cmwlth. 1998). As one court explained:

---

**(continued…)**

523, 531 n.138 (E.D. Pa. 2014) (applying Pennsylvania law) (stating that "conversion is not necessarily an intentional tort" and concluding that "the rule prohibiting indemnity for intentional torts would not bar indemnification for negligent conversion."); *see also Zuppo v. Department of Transportation*, 739 A.2d 1148, 1154-55 (Pa. Cmwlth. 1999) (discussing the "specific intent" necessary to constitute "willful misconduct" for purposes of immunity); *Lumber Insurance Co., Inc. v. Allen*, 820 F. Supp. 33, 34-37 (D.N.H. 1993).

16

Plaintiff simply asserts that the alleged failure to follow DC-ADM 804 denied him a meaningful post deprivation remedy *per se*.

However, prison regulations do not, in themselves, confer a liberty interest protected by due process, and the failure of prison officials to follow [the Department's] policy does not, in and of itself, result in a violation of due process. The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension. Thus, violations of state statutes or rules or regulations that require certain procedures, which are not compelled by the Federal Constitution because there is no liberty interest that those state mandated procedures protect, do not make out a [due process] claim . . . .

*Bohm v. Straw*, (W.D. Pa., No. 12-16J, filed January 8, 2013) (unreported), slip op. at 15-17 (citations and internal quotation marks omitted);[7] *accord Glenn v. Delbalso*, 599 F. App'x 457, 459 (3d Cir. 2015).

In *Weaver v. Department of Corrections*, 829 A.2d 750 (Pa. Cmwlth. 2003), this Court rejected an argument similar to the one currently made by Shore, concluding that although the Department's officials issued untimely grievance decisions, the time constraints in the administrative policies do "not create any enforceable rights in a Pennsylvania state prison inmate." *Id.* at 752. Notably, akin to the policy at issue in *Weaver*, the time limitation in DC-ADM 804 is tempered by disclaimer language that states "[t]his policy does not create rights in any person . . . ." DC-ADM 803, VI. In *Weaver*, we found this language to be "sufficient to dispel any reasonable expectations that an enforceable right is created by the [Department's] policy." *Weaver*, 829 A.2d at 753. Given *Bohm* and *Weaver*, Shore cannot base a due process claim on an alleged violation of DC-ADM 804 because this

---

[7] Available 2013 U.S. Dist. LEXIS 2543.

17

policy does not confer upon him a protected property or liberty interest under the due process clause.

Therefore, because Shore has not pled sufficient facts to set forth a *prima facie* case, the Court grants the Department's preliminary objections and dismisses his due process claim.

**Conclusion**

For the above-stated reasons, the Court sustains the Department's preliminary objections and dismisses Shore's Petition.[8]  Although Shore does not

---

[8] In addition, the Court concludes that Shore's First Amendment and due process claims, which he admittedly asserts against the Department only, and not any officer/employee in either an official or individual capacity, (Petition, ¶3), are barred by 11th Amendment and/or traditional state immunity. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) ("[A] suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the 11th Amendment.  This jurisdictional bar applies regardless of the nature of the relief sought."), *accord Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc*., 506 U.S. 139, 145 (1993) (concluding that injunction to restrain violation of federal law under *Ex parte Young*, 209 U.S. 123 (1908), has "no application in suits against the States and their agencies, which are barred regardless of the relief sought."); *Warren v. Pennsylvania Department of Corrections*, 616 A.2d 140, 142 (Pa. Cmwlth. 1992) (concluding that the Department is not subject to suit for constitutional violations under 42 U.S.C. §1983); *Lavia v. Department of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000) ("Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth . . . it shares in the Commonwealth's [11th] Amendment immunity."); *see also Alden v. Maine*, 527 U.S. 706, 756-57 (1999) (holding that sovereign immunity shields States from private suits in state courts pursuant to federal causes of action); *Quern v. Jordan*, 440 U. S. 332, 342 (1979) (holding that Section 1983 does not abrogate the States' 11th Amendment immunity); *Palmer v. Penn-Ohio Road Materials Inc.*, 462 F.Supp 312, 315 (W.D. Pa. 1978) (noting that Pennsylvania's sovereign immunity statute especially preserved the Commonwealth's 11th Amendment immunity); section 8521 and 8522 of the Judicial Code, 42 Pa.C.S. §§8521, 8522 (preserving the Commonwealth's sovereign immunity and waiving it for only eight specified instances of negligent conduct).

Although the Department does not raise this immunity defense in its preliminary objections, the Court may do so *sua sponte* and utilize it as a ground upon which to dismiss the action. *See* Section 6602(e)(2) of the Pennsylvania Prisoner Litigation Reform Act (PLRA), 42 Pa.C.S. **(Footnote continued on next page…)**

18

seek leave to amend, the Court finds that amendment to the Petition would be a futile exercise and that it is not reasonably probable that Shore could cure the legal deficiencies discussed in this opinion. *See Carlino v. Whitpain Investors*, 453 A.2d 1385, 1388 (Pa 1982). Accordingly, the Court dismisses the Petition with prejudice.

 

_____

PATRICIA A. McCULLOUGH, Judge

---

**(continued…)**

§6602(e)(2) (stating, in pertinent part, that" the court shall dismiss prison conditions litigation at any time . . . if the court determines [the complaint or petition for review] fails to state a claim upon which relief may be granted or the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief."); *Paluch v. Palakovich*, 84 A.3d 1109, 1112 (Pa. Cmwlth. 2014). Therefore, even if Shore has pled cognizable claims under the First Amendment and due process clause, the doctrine of sovereign immunity would compel dismissal of these claims.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Shore,                                          :
                    Petitioner                        :
                                                      :    No. 653 M.D. 2016
          v.                                          :
                                                      :
Pennsylvania Department of                            :
Corrections,                                          :
                    Respondent                        :

## ***ORDER***

AND NOW, this 31st day of July, 2017, the preliminary objections filed by the Department of Corrections (Department) to the petition for review (Petition) filed by Brian Shore in this Court's original jurisdiction are hereby sustained and the Petition is dismissed with prejudice.

_____
PATRICIA A. McCULLOUGH, Judge