IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Brock, pro se,              :
                  Petitioner    :
                              :
       v.                        :
                              :
Pennsylvania Department of    :
Corrections, et al.,            :   No. 358 M.D. 2023
             Respondents   :   Submitted: April 8, 2025

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON              FILED: May 27, 2025

John Brock (Brock) petitions *pro se* in this Court's original jurisdiction for review of the July 25, 2023, final appeal decision and order issued by the Office of Inmate Grievances and Appeals of the Pennsylvania Department of Corrections (DOC). The DOC's order denied Brock's appeal from the May 22, 2023, denial by prison authorities of Brock's grievance regarding the DOC's treatment of his request for self-confinement in a cell of his own. The DOC has filed preliminary objections in response to Brock's amended petition for review. Upon review, we conclude that we lack jurisdiction to consider Brock's petition and transfer this matter to the Court of Common Pleas of Greene County for disposition.

## I. Factual & Procedural Background

The filings and attachments in this matter include a DC-141, Part 4 "review rationale" report indicating that after a period in disciplinary custody, Brock had a meeting on April 4, 2023, with prison authorities from the program review committee (PRC), including State Correctional Institution (SCI)-Greene's deputy superintendent for facilities management, S. Buzas (Buzas). Exhibit "B" to Original Petition for Review. At the meeting, Brock sought self-confinement, meaning a cell of his own, within administrative custody status.[1] *Id.* The one-page report from the meeting includes the facility manager's April 10, 2023, notation recommending self-confinement but does not explain the reasons for that recommendation. *Id.*

Although Brock's request was granted,[2] he filed a grievance in this matter, the record copy of which is illegible. Appendix "A" to Original Petition for Review. The grievance's contents may be deduced from the May 22, 2023, grievance response by unit manager J. Dick (Dick), which stated that Brock asserted that the April 4, 2023, report failed to expressly address his concerns about a corrections officer (Sgt. Lozada) who had allegedly started a rumor that Brock was a jailhouse snitch, which led Brock to fear for his life in the general prison population. Exhibit "C" to Original Petition for Review. Dick's response stated that

---

[1] Administrative custody is a status of confinement for non-disciplinary reasons that provides closer supervision, control, and protection than is provided for in general population. *See* DC-ADM 802 § 3(A)(1).

[2] An initial response to a grievance with a different number from the one at issue here confirms that on or around April 8, 2023, Brock was moved to an administrative custody status cell pod. Appendix "D" to Original Petition for Review. The basis for that grievance was Brock's complaint that he did not receive the paperwork for his transfer, but the grievance response stated that the oversight had since been rectified. *Id.*

he investigated the matter and concluded that at the April 2023 meeting, Brock requested self-confinement because he did not want a cellmate and did not want to be placed with the younger inmates in general population, but did not assert concerns with Sgt. Lozada as a basis for self-confinement. *Id*.

Brock's appeal did not challenge his new housing status; instead, he asserted that Dick's conclusion that Brock had not mentioned Sgt. Lozada at the meeting was fabricated because Dick knew from other sources, including another grievance that Brock filed in March 2023, that Brock feared for his life in the general population. Appendices "B" & "E" to Original Petition for Review. On July 25, 2023, the DOC's final decision was issued. Exhibit "A" to Original Petition for Review. The decision stated that Brock's issues "were sufficiently addressed at previous levels" and that he had offered "no additional evidence or information that would alter those responses." *Id*.

On August 2, 2023, Brock filed a petition for review to this Court from the DOC's July 25, 2023, final order.[3] *See* Petition for Review. Brock initially purported to invoke this Court's appellate jurisdiction, although this Court soon issued an order stating that the petition would be treated as within this Court's original jurisdiction. Order, Aug. 18, 2023. Brock asserted that the DOC officials who decided his grievance were not impartial, failed to comply with the DOC's policies and Ethics Code, and violated his due process rights under the United States and Pennsylvania Constitutions. *Id*. at 1-2. Specifically, Brock asserted that Buzas, who was part of the April 4, 2023, meeting, failed to include in the record a written summary of Brock's oral statement at the meeting that he sought self-confinement because of Sgt. Lozada. *Id*. at 1. Brock added that Dick, the initial grievance officer

---

[3] There is no dispute that Brock exhausted his administrative remedies before turning to this Court for relief.

3

in this matter, lied when he determined that Brock never mentioned his concerns with Sgt. Lozada when this matter was being investigated. *Id*. at 2. Brock sought monetary damages and injunctive relief directing the DOC to transfer him away from SCI-Greene. *Id*.

In September 2023, the DOC filed preliminary objections to Brock's petition. *See* Original Preliminary Objections. The DOC asserted that this Court lacked appellate jurisdiction to consider Brock's claims, that the DOC's handling of the subject grievance did not violate Brock's due process rights, and that the DOC's policies and Ethics Code did not create enforceable or actionable rights for inmates. *Id*. at 4-8.

On October 16, 2023, after receiving this Court's permission, Brock filed an amended petition for review invoking this Court's original jurisdiction. *See* Amended Petition for Review at 1. He reiterated his allegations against Buzas and Dick. *Id*. at 2. He added allegations against the SCI-Greene superintendent (Zaken) for "aiding and abetting" violations of his rights, the DOC's chief grievance officer (Varner) for failing to ensure the integrity of the grievance process, and a representative of the chief grievance officer (Moore) for failing to act with integrity and impartiality in reviewing his grievance. *Id*. at 5-6. The amended petition retained Brock's plea for monetary damages and injunctive relief in the form of a transfer from SCI-Greene and added a new request for injunctive relief in the form of permanent self-confinement status in order to protect him because gang-related inmates had ordered that he be physically harmed. *Id*. at 6-7.

On December 5, 2023, this Court issued an order dismissing Brock's allegations against Zaken, Varner, and Moore because those individuals had not been properly served with the amended petition for review. *See* Order, Dec. 5, 2023.

4

That order also dismissed a further amended petition for review that Brock attempted to file without having first secured the DOC's consent or leave of this Court. *Id.* This left Brock's October 2023 amended petition for review, minus the allegations against Zaken, Varner, and Moore, as the operative pleading.

On January 12, 2024, Brock filed a letter advising this Court that he had been transferred from SCI-Greene to SCI-Coal Township. *See* Letter. On January 26, 2024, he filed a motion for default judgment based on the DOC's failure to respond to his October 2023 amended petition for review. *See* Motion for Default Judgment. On January 31, 2024, the DOC filed preliminary objections to the October 2023 amended petition for review and sought *nunc pro tunc* relief to do so based on a realization that its obligation to respond to the amended petition for review was "likely triggered" by this Court's December 5, 2023, order. *See* Preliminary Objections to Amended Petition for Review & *Nunc Pro Tunc* Request.

On February 14, 2024, this Court issued an order granting the DOC's request for *nunc pro tunc* relief and accepting its preliminary objections to the amended petition for review. *See* Order, Feb. 14, 2024. On March 28, 2024, this Court issued a briefing schedule requiring both sides to file their briefs by April 29, 2024. *See* Order. On May 14, 2024, the DOC filed its brief and an application for *nunc pro tunc* relief, acknowledging its untimeliness. On May 17, 2024, this Court issued an order granting the DOC's application and accepting the brief. *See* Order, May 17, 2024. In the same order, Brock was directed to file his brief by June 13, 2024. *Id*.

Brock filed a letter with this Court on May 13, 2024, advising that he had been transferred from SCI-Coal Township to SCI-Phoenix (SCI-Phoenix). He did not file a brief by June 13, 2024, and this Court issued an order on July 18, 2024,

directing him to do so by August 1, 2024, or the matter would be considered without his brief. *See* Order, July 18, 2024. Brock did not file a brief by August 1, 2024, and this matter is now ripe for review on the DOC's preliminary objections.

## II. Issues

Brock's amended petition for review asserts that the DOC's handling of his grievance violated the agency's policies and Ethics Code as well as his due process rights under both the United States and Pennsylvania Constitutions. *See* Amended Petition for Review at 3-4. The DOC's preliminary objections argue that Brock's claims are an improper attempt to seek judicial review of the outcome of his grievance, that its departmental policies and Ethics Code do not create independently enforceable due process rights for inmates, and that Brock's due process claim based on the Pennsylvania Constitution seeks remedies that cannot be awarded. *See* Preliminary Objections at 4-10.

## III. Discussion

In ruling on preliminary objections, this Court accepts as true all well-pled allegations of material fact in the petition for review, as well as all inferences reasonably deducible from those facts. *Dantzler v. Wetzel*, 218 A.3d 519, 522 n.3 (Pa. Cmwlth. 2019). However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. *Id*. For preliminary objections to be sustained, it must appear with certainty that the law will

6

permit no recovery. *Id.* Any doubt must be resolved in favor of the non-moving party. *Id.*

## A. Appellate Jurisdiction

As a threshold matter, this Court must determine whether we have jurisdiction to consider the merits of this matter. With regard to appellate jurisdiction over inmate matters, this Court does not review prison grievances or misconduct appeals. *Gentilquore v. Dep't of Corr.*, 326 A.3d 512, 516 (Pa. Cmwlth. 2024) (citing *Bronson v. Cent. Off. Rev. Comm.*, 721 A.2d 357, 358-59 (Pa. 1998). "[I]nternal prison operations are more properly left to the legislative and executive branches, and . . . prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference." *Id.* (quoting *Bronson*, 721 A.2d at 358)); *see* 42 Pa.C.S. § 763(a)(1).

Brock's initial petition for review purportedly invoked this Court's appellate jurisdiction. Petition for Review at 1. When the DOC filed its initial preliminary objections to that petition, it raised the issue of this Court's lack of appellate jurisdiction over Brock's claims. Original Preliminary Objections at 4-5. Thereafter, when Brock filed his amended petition for review, he invoked this Court's original jurisdiction instead. Amended Petition for Review at 1.

The DOC maintains that Brock's claims arise out of his dissatisfaction with the outcome of his grievance and that his petition still improperly asks this Court to conduct appellate judicial review of the DOC's final determination. DOC's Br. at 12-14 (relying on *Bronson*). To the extent that Brock's amended petition tacitly seeks our appellate review of the outcome of his grievance, the DOC is correct

7

that reviewing the final determination regarding Brock's grievance is not within our appellate jurisdiction. *See Gentilquore*, 326 A.3d at 516 & n.8.

## B. Original Jurisdiction

There is a narrow category of prisoner due process claims that fall within our original jurisdiction. *Gentilquore*, 326 A.3d at 516. To invoke this Court's original jurisdiction, a petitioner must identify a "constitutionally-protected liberty or property interest" that is not "limited by [DOC] regulations but is affected by a final [DOC] decision." *Id*. States may also create a liberty or property interest protected by due process by adopting regulations that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 516-17. In such cases, the focus of inquiry is on the nature of the alleged deprivation, not the language of a particular regulation. *Id*. at 517. Absent a protected interest, this Court lacks jurisdiction to consider a claim. *Id*.

The due process standards of the United States and Pennsylvania Constitutions are "essentially the same." *Muscarella v. Commonwealth*, 87 A.3d 966, 973 (Pa. Cmwlth. 2014). The petitioner must establish the deprivation of a protected liberty or property interest. *Romig v. Wetzel*, 309 A.3d 1108, 1114 (Pa. Cmwlth. 2024). "Only then will the Court consider what type of procedural mechanism is required to satisfy due process." *Id*.

"In general, allegations that the [DOC] failed to follow its regulations or internal policies cannot support a claim based upon a vested right or duty because these administrative rules and regulations, unlike statutory provisions, usually do not create rights in prison inmates." *Shore v. Dep't of Corr.*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017). "The simple fact that state law prescribes certain procedures does

8

not mean that the procedures thereby acquire a federal constitutional dimension." *Id.* (quoting *Bohm v. Straw*, (W.D. Pa., No. 12-16J, filed Jan. 8, 2013) (unreported), slip op. at 15-17 (citations and internal quotation marks omitted)). Simply put, administrative policies do not create enforceable rights in inmates sufficient to support a cause of action based on due process. *See Bullock v. Horn*, 720 A.2d 1079, 1082 n.6 (Pa. Cmwlth. 1998).

## 1. DC-ADM 802

In addition to the foregoing, the DOC's policy at issue here, DC-ADM 802, which covers hearings associated with administrative custody issues, states: "This policy does not create rights in any person[,] nor should it be interpreted or applied in such a manner as to abridge the rights of any individual."[4] DC-ADM 802 at 2.

Although Brock's request for self-confinement was granted by prison authorities, he alleges that the relevant procedures of DC-ADM 802 were not followed and his due process rights were violated because the PRC's rationale for the transfer did not include a written summary of his oral statement at the April 2023 meeting that he feared for his life due to his issues with Sgt. Lozada. Amended Petition for Review at 3-4. He cites Section 2(A)(6) of DC-ADM 802, which states that at a hearing on administrative custody issues, "[a] PRC member shall write a summary of any relevant oral statement submitted by the inmate." DC-ADM 802 at 17.

The DOC argues that its policies do not create rights "based upon a personal or property interest" so as to support a due process claim. DOC's Br. at 16.

---

[4]https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/802-administrative-custody-procedures.pdf (last visited May 23, 2025).

9

Based on our case law and the statement in DC-ADM 802 that the DOC's policies do not create rights such as Brock asserts, we agree. Because Brock has not identified in DC-ADM 802 a "constitutionally-protected liberty or property interest" that is not "limited by Department regulations but is affected by a final Department decision," this Court lacks original jurisdiction to consider this aspect of Brock's claims. *See Gentilquore*, 326 A.3d at 516.

### 2. DOC Ethics Code

In addition to the case law cited above, the DOC's Ethics Code "is identified as 'rules and regulations' in the document itself." *Tillman v. Dep't of Corr.* (Pa. Cmwlth., No. 327 M.D. 2016, filed June 9, 2017), slip op. at 6 n.6, 2017 WL 2536456, at *3; *see also* DOC Ethics Code at 6 (stating that "[t]hese rules and regulations have been written in the best interest of the [DOC], its employees, and the public"). As with DC-ADM 802, the Ethics Code does not create a personally enforceable right to relief for inmates, although ethics violations by DOC employees may subject them to disciplinary action. DOC Ethics Code at 6.

Brock claims that Dick lied in his May 22, 2023, initial review response indicating that Brock had not mentioned his issues with Sgt. Lozada when he sought self-confinement. Amended Petition for Review at 4. Brock asserts that Dick's fabrication violated the DOC Ethics Code provisions requiring employees to treat inmates impartially, without insolence, and to be truthful in work-related reports. *Id*.; *see also* DOC Ethics Code §§ B(1), (10) & (22). DOC responds that its policies, including the Code of Ethics, do not create personally enforceable rights for inmates. DOC's Br. at 17. Based on our case law holding that DOC policies do not confer personally enforceable rights sufficient to support a cause of action based on due

10

process under either the federal or Pennsylvania constitutions, we agree. *See Shore*, 168 A.3d at 386; *Bullock*, 720 A.2d at 1082 n.6. Because Brock has not identified in the DOC's Ethics Code a "constitutionally-protected liberty or property interest" that is not "limited by Department regulations but is affected by a final [DOC] decision," this Court lacks original jurisdiction to consider this aspect of Brock's claims. *See Gentilquore*, 326 A.3d at 516.

### C. Transfer to Court of Common Pleas

In *Stackhouse v. Commonwealth*, 832 A.2d 1004 (Pa. 2003), where the plaintiff asserted claims based on defamation and invasion of privacy, our Supreme Court held that pursuant to *Balshy v. Rank*, 490 A.2d 415, 420-21 (Pa. 1985), "all actions against the Commonwealth or its officers acting in their official capacity for money damages based upon tort liability fall outside the scope of the Commonwealth Court's original jurisdiction and are properly commenced in the courts of common pleas." *Id.* at 1008. In addition to common law tort liability, this principle encompasses "civil action[s] for deprivations of civil rights under 42 U.S.C. § 1983."[5] *Miles v. Beard*, 847 A.2d 161, 164 (Pa. Cmwlth. 2004). In such instances, this Court cannot assume ancillary jurisdiction over such claims unless the cause of action includes another claim that independently falls within our original

---

[5] Enacted as part of the Civil Rights Act of 1871, this statute allows individuals to sue a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983.

11

jurisdiction. *Thomas v. Dep't of Corr.* (Pa. Cmwlth., No. 256 M.D. 2023, filed April 14, 2025), slip op. at 6, 2025 WL 1098289, at 3 (unreported).[6]

In *Thomas*, the inmate filed a petition for review in this Court asserting that prison authorities violated his First Amendment rights by retaliating against him for filing a complaint against one corrections officer for sexual assault and a grievance against a unit manager asserting racial problems in his housing unit; the inmate sought monetary damages. *Id.*, slip op. at 4, 2025 WL 1098289, at *2. Citing *Stackhouse*, this Court concluded that it lacked jurisdiction over Thomas's claims, which asserted a deprivation of constitutional rights and sought monetary damages for that injury. *Id.*, slip op. at 6-7, 2025 WL 1098289, at *3. However, "[r]ather than dismiss his action outright . . . we will transfer it to Common Pleas, which shall treat his petition as a complaint filed in its original jurisdiction, where the assigned Common Pleas judge shall rule upon [the DOC's] preliminary objections." *Id.*, slip op. at 7, 2025 WL 1098289, at *3 (citing *Stedman v. Lancaster Cnty. Bd. of Comm'rs*, 221 A.3d 747, 760-61 (Pa. Cmwlth. 2019); 42 Pa.C.S. § 5103(a); Pa.R.A.P. 751; and PA. CONST. art. V, § 5(b) (stating that our courts of common pleas "hav[e] unlimited original jurisdiction in all cases except as may otherwise be provided by law")); *see also White v. Dep't of Corr.* (Pa. Cmwlth., No. 420 M.D. 2023, filed Jan. 13, 2025), 2025 WL 79615 (unreported) (transferring matter where inmate sought monetary damages for asserted prison authorities' constitutional violations in moving him to restricted housing, charging him with a misconduct, and conducting the hearing on the misconduct); *Prater v. Wetzel* (Pa. Cmwlth., No. 676 M.D. 2019, filed Sept. 16, 2024), 2024 WL 4195167 (unreported) (same disposition

---

[6] Under Section 414(a) of this Court's Internal Operating Procedures, we may cite unreported memorandum decisions of this Court, issued after January 15, 2008, for their persuasive value. 210 Pa. Code § 69.414(a).

regarding inmate's monetary damages claim for asserted constitutional violations in association with a "cell block-wide lockdown, which was imposed due to a violent incident that involved other inmates and in which he played no part").

Here, Brock claims that the DOC and its employees Buzas and Dick violated his procedural due process rights while conducting the investigation and grievance proceedings concerning his request to be housed in his own cell. Amended Petition for Review at 2-6. He seeks injunctive relief and monetary damages. *Id*. at 6-7. As in *Thomas*, *White*, and *Prater*, Brock has asserted deprivations of his constitutional rights and seeks monetary damages for those injuries, over which this Court has no jurisdiction. In accordance with those cases, rather than dismiss Brock's petition outright, we will transfer it to the Court of Common Pleas of Greene County, where this matter arose.[7] That court "shall treat his petition as a complaint filed in its original jurisdiction" and the assigned judge "shall rule upon [the DOC's] preliminary objections." *Thomas*, slip op. at 7, 2025 WL 1098289, at *3.

## IV. Conclusion

For the foregoing reasons, this matter is transferred to the Court of Common Pleas of Greene County due to lack of jurisdiction in this Court.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[7] In *Thomas*, as here, the inmate was transferred to another state prison after the litigation commenced, but this Court transferred the matter to the court of common pleas in the county where the litigation arose. *Thomas*, slip op. at 2 & Order, 2025 WL 1098289, at *1 & Order.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Brock, pro se, : 
              Petitioner : 
               : 
       v. : 
               : 
Pennsylvania Department of : 
Corrections, et al., :   No. 358 M.D. 2023
          Respondents : 

# **O R D E R**

AND NOW, this 27th day of May, 2025, it is hereby ORDERED that Petitioner John Brock's Amended Petition for Review and the Preliminary Objections to the Amended Petition for Review filed by the Pennsylvania Department of Corrections are TRANSFERRED to the Court of Common Pleas of Greene County (trial court), due to lack of jurisdiction.

The Commonwealth Court's Prothonotary shall transmit the record of the above-captioned proceedings to the trial court's Prothonotary, together with a copy of this opinion and order and a copy of this matter's docket entries. Subsequent to transfer, the assigned trial court judge shall rule upon the preliminary objections filed by Respondents Pennsylvania Department of Corrections, S. Buzas, and J. Dick within 45 days of the transmission of the documents listed above.

_____
CHRISTINE FIZZANO CANNON, Judge