# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daryl Brady, :
               Petitioner :
    :
    :
         v. :
    :
    :
Chief Hearing Examiner Zachary J. :
Moslak, Superintendent Barry Smith, :
Deputy D.J. Close, Major J. Barrows, :
Lt. Buterbaugh, Sgt. J. Murarik, :
Hearing Examiner S. Wiggins, and :
C.J. McKeown, : No. 482 M.D. 2019
             Respondents : Submitted: June 26, 2020


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                   FILED:  July 30, 2020

Before this Court are the preliminary objections (Preliminary Objections) filed by Chief Hearing Examiner Zachary J. Moslak, Superintendent Barry Smith (Superintendent Smith), Deputy D.J. Close, Major J. Barrows, Lt. Buterbaugh (Buterbaugh), Sgt. J. Murarik (Murarik), Hearing Examiner S. Wiggins (Hearing Examiner Wiggins) and C.J. McKeown (McKeown) (collectively, Respondents) to Daryl Brady's (Brady) pro se amended petition for review in the nature of a complaint in mandamus (Petition) filed in this Court's original jurisdiction. After review, we sustain the Preliminary Objections and dismiss the Petition.

**Background**

Brady is currently an inmate at the Pennsylvania Department of Corrections' (Department) State Correctional Institution (SCI) at Dallas. *See Inmate Locator*, PA. DEP'T OF CORR., http://inmatelocator.cor.pa.gov (last visited July 27, 2020). On March 15, 2019, Buterbaugh issued a Form DC-141 (DC-141) Misconduct Report (Misconduct) No. D323350 to Brady, wherein Buterbaugh charged Brady with participating in a fight, and placed Brady in a restricted housing unit (RHU) pending disposition by a hearing examiner. *See* Petition ¶ 5; *see also* Petition Ex. A. On March 20, 2019, McKeown conducted a videoconference hearing, which he continued to April 2, 2019, in order for Brady to review an archived video of the fight to determine whether there were identifiable participants or witnesses. *See* Petition ¶ 6; *see also* Petition Ex. A(1).

On April 2, 2019, McKeown issued a DC-141, stating:

> [Brady] was placed in [administrative custody (]AC[)] status pursuant to DC[-]ADM 802 [(Administrative Custody Procedures)], Section 1.B.1.f – [Brady] has been charged with, or is under investigation for a violation of facility rules and there is need for increased control pending disposition of charges or completion of the investigation. Specifically, [M]isconduct [Report No.] D323350 was [d]ismissed [w]ithout [p]rejudice and is pending potential re-write.

Petition ¶ 7; *see also* Petition Exs. B, B(1). The April 2, 2019 DC-141 directed that Brady was to "remain in RHU-AC status pending re-write[.]" Petition Ex. B; *see also* Petition Ex. B(1).

On April 16, 2019, Buterbaugh issued new Misconduct No. D355498, again charging Brady with participating in the March 15, 2019 fight, but this time based on Murarik's identification of Brady as one of the combatants. *See* Petition ¶ 8; *see also* Petition Exs. C, C(1), C(2). Brady remained in AC status pending

disposition of Misconduct No. D355498. *See* Petition Ex. C. On April 18, 2019, after a hearing, Hearing Examiner Wiggins found Brady guilty of Misconduct No. D355498, ordered him confined to the RHU for 45 days effective March 15, 2019, and removed him from his job.[1] *See* Petition ¶ 9; *see also* Petition Ex. D.

On April 25, 2019, Brady appealed from the April 18, 2019 decision to the Program Review Committee (PRC), claiming "the procedures employed were contrary to law, Department directives, or regulations;" "the punishment is disproportionate to the offense; and/or" "the findings of fact were insufficient to support the decision." Petition ¶ 12; *see also* Petition Ex. F. On May 1, 2019, the PRC upheld the April 18, 2019 decision, stating:

> PRC has reviewed the procedures employed in regards to this misconduct and finds that no violations of law, Department directive, or regulation exist. PRC finds that the sanction imposed by [Hearing Examiner Wiggins] is within the guidelines established in DC-ADM 801.
>
> As inmate Brady should be aware, [Hearing Examiner Wiggins] is authorized to impose various sanctions, including up to 90 days disciplinary custody for each charge set forth on the misconduct in which the inmate is found guilty/pleads. In the present case, [Hearing Examiner Wiggins] imposed a more lenient sanction of 45 days disciplinary custody and removal from job [sic].
>
> PRC informs inmate Brady that [Hearing Examiner Wiggins] is charged with making determinations of guilt or innocence based upon a preponderance of evidence. In this

---

[1] On April 25, 2019, Brady received a DC-141 describing that he

> was placed in AC status pursuant to DC[-]ADM 802, Section 1.B.1.a - the inmate is in danger from some person(s) in the facility and cannot be protected by alternate measures, and/or the inmate is a danger to some person(s) in the facility and the person(s) cannot be protected by alternate measures. Specifically, it has been determined there are separation concerns with [Brady's] placement in [the] general population. [Brady] is to remain in the L-5 pending transfer.

*See* Petition ¶ 11; *see also* Petition Exs. E, E(1).

3

particular matter, [Hearing Examiner Wiggins] completed the hearing and found [] Buterbaugh's report more credible than the inmate's denial.

PRC also notes [Hearing Examiner Wiggins] states in his findings that video evidence corroborates [] Murarik as a responder who [identified] Brady as involved.

Petition Ex. F(1).

On May 3, 2019, Brady appealed from the PRC's May 1, 2019 decision, to the Facility Manager. *See* Petition ¶ 12; *see also* Petition Ex. F(2). On May 9, 2019, Superintendent Smith sustained the PRC's decision. *See* Petition ¶ 12; *see also* Petition Ex. F(3).

On May 14, 2019, Brady filed his Final Appeal in the Office of Chief Hearing Examiner. *See* Petition ¶ 13; *see also* Petition Ex. G. By June 17, 2019 letter, Western Region Deputy Secretary Trevor Wingard (Deputy Secretary Wingard) notified Brady that the Office of Chief Hearing Examiner recommended that Misconduct No. D355498 be remanded and reheard, and that Deputy Secretary Wingard agreed and remanded the matter for a rehearing. *See* Petition ¶¶ 14-15; *see also* Petition Exs. G(1), H, H(1), H(2).

On remand, following a July 2, 2019 rehearing, Hearing Examiner Wiggins again found Brady guilty, ordered him confined for 45 days effective March 15, 2019, and removed him from his job.[2] *See* Petition ¶ 16; *see also* Petition Ex. I(1).

### Facts

On August 28, 2019, Brady filed the Petition, wherein he alleged: there was insufficient evidence to support Hearing Examiner Wiggins' conclusion that

---

[2] Brady appealed from the July 2, 2019 decision the same day. *See* Petition ¶ 16; *see also* Petition Ex. I(2). It is not clear based on this record whether the Department decided Brady's July 2, 2019 appeal.

Brady was involved in the March 15, 2019 fight; Hearing Examiner Wiggins violated Brady's due process rights under Section 93.10(b) of the Department's Regulations, 37 Pa. Code § 93.10(b), by not conducting a hearing within seven days; by manipulating the hearings in the staff's favor; and by acting without the commission necessary to administer oaths and affirmations, take depositions, read testimony or take evidence, as mandated by Section 16(a) of The Notary Public Law of 1953 (NPL).[3]  *See* Petition ¶¶ 17-20.  Brady further asserted that Hearing Examiner Wiggins' decision adversely affected his parole.  *See* Petition ¶ 20.  Brady requests $1,000.00 for each day that he was held under unlawful adjudications, expungement or dismissal of Misconduct No. D355498, or remand for the Department to dismiss Misconduct No. D355498.  *See* Petition at 6.

On November 20, 2019, Respondents filed the Preliminary Objections, wherein they argue the Petition must be dismissed because: (1) this Court lacks jurisdiction over claims involving internal prison disciplinary matters; and (2) Brady failed to state a viable due process claim because he does not have a legally cognizable liberty interest in remaining free from an RHU.  *See* Preliminary Objections at 2-3.

By January 6, 2020 Order, this Court directed Respondents to file a brief in support of their Preliminary Objections by February 5, 2020, and Brady to file his opposing brief by March 6, 2020.  Respondents filed their brief on January 9, 2020.  Because Brady had not yet filed a brief, on April 17, 2020, this Court ordered Brady

---

[3] Section 16(a) of the NPL authorized notaries to take affidavits upon oath or affirmation. *See* Act of August 21, 1953, P.L. 1323, *as amended*, *formerly* 57 P.S. § 162(a), repealed by the Revised Uniform Law on Notarial Acts (RULNA), Act of October 9, 2013, P.L. 609, 57 Pa.C.S. §§ 301-331, effective October 26, 2017.  Section 302 of the RULNA now defines "notarial officer" as "[a] notary public or other individual authorized to perform a notarial act."  57 Pa.C.S. § 302.  Notarial acts include: "(1) taking an acknowledgment; (2) administering an oath or affirmation; (3) taking a verification on oath or affirmation; (4) witnessing or attesting a signature; (5) certifying or attesting a copy or deposition; and (6) noting a protest of a negotiable instrument."  *Id*.  However, that provision does not restrict such authority to commissioned notaries.

to file his brief by May 20, 2020, or be precluded from doing so. Brady did not file a brief.

**Discussion**

The law is well settled:

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.

> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review in the nature of a] complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review in the nature of a] complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted). "[C]ourts reviewing preliminary objections may not only consider the facts pled in the [petition for review in the nature of a] complaint, but also any documents or exhibits attached to it." *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014).

Initially, Section 93.10(b) of the Department's Regulations specifies:

> Written procedures which conform to established principles of law for inmate discipline including the following will be maintained by the Department and disseminated to the inmate population:

> (1) Written notice of charges.

6

(2) Hearing before an impartial hearing examiner . . . .

(3) Opportunity for the inmate to tell his story and to present relevant evidence.

(4) Assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively.

(5) Written statement of the decision and reasoning of the hearing body, based upon the preponderance of the evidence.

(6) Opportunities to appeal the misconduct decision in accordance with procedures in the [Department's] *Inmate Handbook.*

37 Pa.Code § 93.10(b).

Misconduct hearings are specifically addressed in Section 3 of the Department's DC-ADM 801 (Inmate Discipline Procedures Manual) (Policy). *See* DC-ADM 801, Section 3 ("Misconduct Hearings"). Section 3.A.2 of the Policy requires that a "misconduct hearing shall be scheduled no less than 24 hours and no more than seven working days, excluding weekends and state holidays, after notice of the charge is served." DC-ADM 801, Section 3.A.2. Section 3.A.4 of the Policy declares: "The Hearing Examiner is solely responsible for decisions of credibility and guilt or innocence. Any sanction is to be decided by the Hearing Examiner." DC-ADM 801, Section 3.A.4. The Department grades fighting as a Class I Misconduct. *See* DC-ADM 801, Attachment 1-A. Section 4.B.4 of the Policy ("Disposition of Charges and Misconduct Sanctions") states, in pertinent part: "In addition to the possible removal from his/her job assignment, one or more of the following sanctions may also be imposed for a Class I Misconduct: . . . assignment to Disciplinary Custody (DC) status for a period not to exceed 90 days per misconduct charge[.]" DC-ADM 801, Section 4.B.4; *see also* Section 93.10(a)(1)(ii), (iii) and (a)(2)(v) of the Department's Regulations, 37 Pa. Code § 93.10(a)(1)(ii), (iii) and (a)(2)(v).

7

Respondents' first Preliminary Objection is that this Court lacks jurisdiction over claims involving internal prison disciplinary matters. "This Court and our Pennsylvania Supreme Court have previously held that [the Department's] decision[s] concerning charges of misconduct against an inmate are beyond this Court's . . . original jurisdiction." *Brown v. Pa. Dep't of Corr.*, 913 A.2d 301, 305 (Pa. Cmwlth. 2006).[4] "Specifically, '[i]**nmate misconducts are a matter of internal prison management and, thus, do not constitute adjudications subject to appellate review**.'" *Dantzler v. Wetzel*, 218 A.3d 519, 522 (Pa. Cmwlth. 2019) (emphasis added) (quoting *Hill v. Dep't of Corr.*, 64 A.3d 1159, 1167 (Pa. Cmwlth. 2013)).

> [A]s to the viability of [Brady's] suit in this Court's original jurisdiction, [the Department's] decisions regarding inmate misconducts generally fall outside the scope of our original jurisdiction. *Hill*. This holds true even where a prisoner's constitutional rights were allegedly violated because '[p]rison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens.' *Bronson v. Cent. Office Review Comm.*, . . . 721 A.2d 357, 359 ([Pa.] 1998). Indeed, 'incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' *Robson v. Biester*, . . . 420 A.2d 9, 13 ([Pa. Cmwlth.] 1980).

*Dantzler*, 218 A.3d at 523. Accordingly, this Court has no authority to address Brady's internal prison disciplinary claim. Because this Court does not have original or appellate jurisdiction over Respondents' misconduct decisions, Respondents' first Preliminary Objection is sustained.

Respondents' second Preliminary Objection is that Brady has failed to state a viable due process claim because he does not have a legally cognizable liberty

---

[4] In *Brown*, as here, the petitioner challenged, *inter alia*, the Department's decision to place him under restrictions for 30 days as part of his misconduct.

interest in remaining free from an RHU. This Court has explained: "'There is a narrow exception [to this Court's jurisdictional limitation] if an inmate can identify a personal or property interest not limited by [the Department's] regulations and affected by a final [Department] decision. . . .' *Hill*, 64 A.3d at 1167 (citation omitted)." *Dantzler*, 218 A.3d at 523.

However, relevant to the instant matter, Section VI of the Policy declares, in relevant part: "Th[e] [P]olicy does not create any rights in any person . . . ." DC-ADM 801, Section VI ("Rights under this Policy"). Moreover, "[t]he [c]ourts of this Commonwealth and the [f]ederal [c]ourts have consistently held that prison officials have the authority to determine where a prisoner should be housed[,] and that the [d]ue [p]rocess [c]lause imposes few restrictions on the use of that authority." *Singleton v. Lavan*, 834 A.2d 672, 675 (Pa. Cmwlth. 2003). The *Dantzler* Court explained:

> This Court previously held that identical, 'disclaimer' language in another [Department] policy was 'sufficient to dispel any reasonable expectation that an enforceable right [was] created by the [Department's] policy.' *Weaver v. [Pa.] Dep't of Corr.*, 829 A.2d 750, 753 (Pa. Cmwlth. 2003).
>
> In so doing, the *Weaver* Court discussed *Sandin v. Conner*, 515 U.S. 472 . . . (1995), in which the [United States (]U.S.[)] Supreme Court considered whether liberty interests were created by prison regulations relating to disciplinary confinement. The U.S. Supreme Court in *Sandin* determined a state-created liberty interest could arise only when a prison's action imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Id.* The [*Sandin*] Court went on to point out that the punishment of incarcerated prisoners serves the aim of effectuating prison management and prisoner rehabilitative goals and that **discipline by prison officials in response to misconduct is within the expected parameters of the prisoner's sentence**. The [*Sandin*] Court found **the prisoner's placement in segregated**

**confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest**.

. . . .

**In addition, '[a] prison authority's adoption of policies and practices creates neither rights in inmates *nor a constitutionally protected interest triggering the inmates' due process protection*.'** *Orozco v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 268 C.D. 2013, filed January 14, 2014), slip op. at 4-5 . . . (unreported) (citing *Olim v. Wakinekona*, 461 U.S. 238 . . . (1983); *Weaver*; *Bullock v. Horn*, 720 A.2d 1079 (Pa. Cmwlth. 1998)) (emphasis added); *see also Shore v.* [*Pa.*] *Dep't of Corr.*, 168 A.3d 374 (Pa. Cmwlth. 2017). Thus, a **failure to comply with prison policy is not a basis for a cause of action**. . . .

*Dantzler*, 218 A.3d at 523-24 (bold emphasis added).

In the instant matter, Brady was similarly confined in the RHU, which is not an "atypical, significant deprivation in which a state might conceivably create a liberty interest." *Dantzler*, 218 A.3d at 523. Nor can Brady base his cause of action on Respondents' alleged failure to comply with Department policy (i.e., timing of hearings), *Dantzler*, because Hearing Examiner Wiggins may not have been a commissioned notary, *see Curtis v. Canino* (Pa. Cmwlth., No. 160 M.D. 2015, filed March 6, 2017),[5] or because Hearing Examiner Wiggins' decision may affect Brady's

---

[5] The *Curtis* Court concluded:

The premise underlying [the inmate's] claim—that a [Department] hearing examiner must hold a notary commission in order to swear in witnesses—is baseless. [The inmate] cites no statute, regulation or rule that would require that a [Department] hearing examiner be a notary. Furthermore, we are aware of no authority that would impose a notary requirement on [Department] hearing examiners . . . . While Section 16(a) of the [NPL] provide[d] that '[n]otaries shall have power to administer oaths and affirmations,' [former] 57 P.S. § 162(a), nothing in the [NPL] state[d] that only notaries shall have that power. In fact, Section 517 of the Administrative Code of 1929[, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 197,] provides heads of administrative departments, deputy heads of departments and

10

parole. *See Moss v. SCI-Mahanoy Superintendent Pa. Bd. of Prob. & Parole*, 194 A.3d 1130 (Pa. Cmwlth. 2018) (since parole is a matter of administrative discretion, a prisoner does not have an automatic right thereto). Because Brady has not alleged that Respondents violated any legally cognizable liberty interest, Brady failed to state a due process claim upon which this Court may grant relief. Accordingly, Respondents' second Preliminary Objection is sustained.

## Conclusion

Because it appears with certainty based on the allegations in the Petition that this Court lacks jurisdiction to decide this matter, and the law will not permit the relief requested therein, Brady cannot establish a clear legal right to relief. Accordingly, Respondents' Preliminary Objections are sustained, and Brady's Petition is dismissed.

_____
ANNE E. COVEY, Judge

---

> members of boards or commissions with the power to administer oaths or affirmations or to designate any officer or employee of those agencies to administer an oath or affirmation.

*Curtis*, slip op. at 7-8 (footnote omitted).

This Court acknowledges that its unreported memorandum opinions may only be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). Accordingly, *Curtis* is cited herein for its persuasive value.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daryl Brady, :
               Petitioner :
                :
         v. :
                :
Chief Hearing Examiner Zachary J. :
Moslak, Superintendent Barry Smith, :
Deputy D.J. Close, Major J. Barrows, :
Lt. Buterbaugh, Sgt. J. Murarik, :
Hearing Examiner S. Wiggins, and :
C.J. McKeown, : No. 482 M.D. 2019
            Respondents :

## O R D E R

AND NOW, this 30th day of July, 2020, the preliminary objections filed by Chief Hearing Examiner Zachary J. Moslak, Superintendent Barry Smith, Deputy D.J. Close, Major J. Barrows, Lt. Buterbaugh, Sgt. J. Murarik, Hearing Examiner S. Wiggins, and C.J. McKeown to Daryl Brady's (Brady) pro se petition for review in the nature of a complaint for mandamus relief (Petition) are SUSTAINED, and Brady's Petition is DISMISSED.

_____
ANNE E. COVEY, Judge