# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Com. ex rel. Omar Jackson, : 
                              Petitioner : 
                                        : 
                v. :   No. 47 M.D. 2017 
                                        :   Submitted: December 30, 2021 
John E. Wetzel, Secretary : 
Pennsylvania Department of : 
Corrections, and Lawrence P. : 
Mahally, Superintendent, State : 
Correctional Institution at Dallas, : 
and Pennsylvania Department of : 
Corrections, : 
                        Respondents : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: July 21, 2022**

Before the Court is the Motion for Judgment on the Pleadings filed by Omar Jackson (Jackson), pro se, and the Cross-Application for Summary Relief in the Form of a Motion for Summary Judgment (Motion for Summary Judgment) filed by John E. Wetzel, Secretary, Pennsylvania Department of Corrections, Lawrence P. Mahally, Superintendent of the State Correctional Institution at Dallas (SCI-Dallas), and the Pennsylvania Department of Corrections (DOC) (collectively,

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

Respondents).  Upon careful review, we deny Jackson's Motion for Judgment on the Pleadings and grant Respondents' Motion for Summary Judgment.

## I. BACKGROUND

### A. *Factual Allegations*

The factual allegations, as we described in *Commonwealth ex rel. Omar Jackson v. John E. Wetzel* (Pa. Cmwlth., No. 47 M.D. 2017, filed June 13, 2018) (*Jackson I*), are as follows.  "On November 16, 2016, [DOC] charged Jackson with a violation of SCI-Dallas Rule 26, 'Any Criminal Violation of the Pennsylvania Crimes Code,[2]' and Rule 40, 'Unauthorized Use of the Mail or Telephone.'"  *Id.*, slip op. at 2.  This misconduct arose out of Jackson's alleged involvement in forwarding an envelope, on which was the name of a second inmate, Marcell Smith (Smith), that contained a letter to someone outside the institution instructing them on how to sneak contraband into SCI-Dallas, a map of SCI-Dallas, and a second letter allegedly signed by Jackson asking for the recipient to forward it to another person.

> On November 22, 2016, a hearing examiner conducted a disciplinary hearing.  Jackson pleaded not guilty to a violation of Rule 26 and guilty to a violation of Rule 40.  Jackson testified on his own behalf at the hearing and requested permission to call two additional witnesses.  The hearing examiner permitted Jackson to testify and call one witness[, the charging Corrections Officer Lieutenant Starzynski], but the hearing examiner declined to hear testimony from the second witness[, Smith,] on the ground that testimony from the second witness was unnecessary to determine the relevant facts.  (Amended Petition[] [Exhibit (]Ex.[)] B.)  The hearing examiner found Jackson guilty of violating both Rule 26 and Rule 40.  (Amended Petition[] Ex. A.)

---

[2] 18 Pa.C.S. §§ 101-7707.

2

Jackson filed with this Court a petition for writ of mandamus[3] (Petition) and an application for leave to proceed *in forma pauperis*, the latter of which the Court granted. Respondents filed preliminary objections in the nature of a demurrer, arguing that Jackson's Petition was legally insufficient. Jackson then filed the Amended Petition and, as a result, this Court dismissed Respondents' first preliminary objections. Respondents filed preliminary objections to the Amended Petition, and Jackson filed preliminary objections to Respondents' preliminary objections. This Court overruled Jackson's preliminary objections.

*Jackson I*, slip op. at 2. After review, the Court then overruled Respondents' preliminary objections and directed Respondents to file an answer to the Amended Petition. *Id.*, slip op. at 7, Order.

### B. Respondents' Answer and New Matter and Jackson's Response

On July 11, 2018, Respondents filed their Answer and New Matter to the Amended Petition, in which Jackson asserts that his due process rights were violated because the hearing examiner refused to allow Smith to testify and was not impartial because Jackson had observed the hearing examiner speaking with Lieutenant Starzynski prior to the hearing. In the Answer, Respondents deny the Amended Petition's material allegations as being legal conclusions to which no response was required or because they lack sufficient knowledge to respond.

---

[3] "Mandamus is an extraordinary writ that will only lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the [petitioner], a corresponding duty in the [respondent], and want of any other appropriate and adequate remedy." *Jackson v. Vaughn*, 777 A.2d 436, 438 (Pa. 2001). Mandamus is not used to establish legal rights, but to enforce rights that are "already established beyond peradventure." *Lawrence v. Pa. Dep't of Corr.*, 941 A.2d 70, 72 (Pa. Cmwlth. 2007). Mandamus will not lie to "direct the exercise of judgment or discretion in a particular way, or to direct the retraction or reversal of an action already taken." *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1108 (Pa. 2007).

As New Matter, Respondents make the following relevant averments. Jackson received a misconduct for "several violations of institutional rules, including a violation of the Pennsylvania Crimes Code and the unauthorized use of the mail or telephone." (Respondents' New Matter ¶¶ 1-2.) Jackson submitted a witness request to call Smith, based on Jackson's belief that Smith's testimony was relevant because Smith's name was on the envelope that was the basis for the unauthorized use of the mail misconduct charge. At the misconduct hearing, Jackson "voluntarily plead[ed] guilty to the charge of unauthorized use of the mail or telephone, but plead[ed] not guilty to the charge of violating the Pennsylvania Crimes Code." (*Id.* ¶¶ 4-5.) Jackson testified on his own behalf and submitted a written version of what transpired. The hearing examiner found that Jackson admitted to "forwarding a letter containing a map of the institution and instructions for introducing contraband into the facility to an outside individual." (*Id.* ¶ 7.) Relying on that admission and the investigation and testimony from Lieutenant Starzynski, the hearing examiner found Jackson guilty of the misconduct charges. (*Id.* ¶¶ 7-8.)

In response to the claim that the hearing examiner should have allowed Smith to testify, Respondents assert that "[d]etermining whether requested witnesses are necessary or would aid" in the misconduct hearing is within the hearing examiner's discretion. (*Id.* ¶ 10.) Respondents aver that because Jackson had already admitted to the unauthorized use of the mail and was identified during the investigation as the individual who had forwarded the envelope, Smith's testimony was "insignificant." (*Id.* ¶ 9.) Respondents further aver that all the requirements of due process were followed and that Jackson was given "every opportunity to defend himself at the misconduct hearing, through testimony and a written statement." (*Id.* ¶¶ 11-12.)

4

Jackson filed an Answer to Respondents' New Matter. Therein, Jackson admits to requesting Smith to testify due to Smith's name being on the envelope, to having a misconduct hearing, and to voluntarily pleading guilty to the charge of unauthorized use of the mail or telephone and not guilty to the charge of violating the Pennsylvania Crimes Code. (Jackson's Answer to New Matter ¶¶ 3-5.) Jackson acknowledges that the hearing examiner found that Jackson admitted to forwarding the letter to an outside individual, but disagrees with any suggestion that he placed the information in the envelope, as Smith was the one "that put the map inside the envelope." (*Id.* ¶ 7.) Jackson further denies that the hearing examiner relied on Jackson's admission, as well as Lieutenant Starzynski's investigation, to find him guilty of the misconduct charges. Finally, Jackson contends that Respondents' averment that Jackson's admission to being involved and identification in the investigation as having been the one to forward the envelope rendered Smith's testimony insignificant is a legal conclusion to which no response is required.

## II. MOTIONS BEFORE THE COURT

On April 27, 2021, Jackson filed a Motion for Judgment on the Pleadings. Jackson asserts that Respondents' "blanket denials of the allegations relating to [Respondents'] intentional deprivation of [Jackson's] due process right[s], [w]hich [] are set forth in paragraphs 2-18 of the [A]mended [Petition], [are] improper under [Pennsylvania Rule of Civil Procedure 1028(c),] Pa.R.Civ.P. 1028(c), and constitute[] an admission of the allegations." (Jackson's Motion for Judgment on the Pleadings (Jackson's Motion) ¶ 4.) Jackson further argues that Respondents admitted in their New Matter various allegations regarding Jackson's inability to call a properly requested and relevant exculpatory witness, Smith, and the corresponding violation of his due process rights. (*Id.* ¶¶ 5-10.) Thus, Jackson contends that

5

Respondents' New Matter "admits [Jackson's] allegations that [Respondents] denied [Jackson] the right to present an adequate defense by denying an exculpatory witness[]" from testifying under the guise of "being irrelevant, [w]hile considering the [f]raudulent testimony of an uncorrob[o]rated adverse witness[, Lieutenant Starzynski, who] initiated the investigation, [and] authored the misconduct." (*Id.* ¶ 11.) Jackson further argues that Respondents failed to set forth any facts that would support their claim that Jackson was provided an opportunity to be heard and present evidence in accordance with DOC's internal policies and the Pennsylvania Code, 37 Pa. Code §§ 91.1-97.118. (*Id.* ¶ 12.) Thus, Jackson asserts, there is no genuine issue of material fact, and he is entitled to judgment as a matter of law. (*Id.* ¶¶ 14-15.)

Thereafter, Respondents simultaneously filed an Answer to Jackson's Motion for Judgment on the Pleadings, the Motion for Summary Judgment, and a brief in support thereof. In their Answer, Respondents deny that their Answer and New Matter admitted any of the material allegations of the Amended Petition, asserting that their "denials, as reflected in their answer to the [Amended Petition], are appropriate and proper." (Respondents' Answer to Jackson's Motion ¶¶ 4-9, 11.) Respondents argue that Jackson has failed to show a lack of any genuine issues of material fact and that his arguments rely "upon serious mischaracterizations of Respondents' [N]ew [M]atter, rather than any admissible evidence that could support [Jackson's] contention that" his due process rights were violated. (*Id.* ¶ 14.) Respondents attach to their brief clearer copies of certain exhibits that were attached to the Amended Petition, as well as the original misconduct report filed by Lieutenant Starzynski that was referenced in the Amended Petition, to which both Respondents and Jackson cite in their briefs.[4] (*See* Respondents' Brief (Br.) at 10;

---

[4] Jackson does not object to the attachment of the misconduct report, which was referenced in the Amended Petition, and, as mentioned, cites to it himself in his brief.

Jackson's Br. at 10-11.) Thus, Respondents request that Jackson's Motion for Judgment on the Pleadings be denied and their Motion for Summary Judgment be granted.

## III. DISCUSSION

### A. *Applicable Legal Standards*

Motions for judgment on the pleadings and summary judgment filed in this Court's original jurisdiction are considered motions for summary relief governed by Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b). Rule 1532(b) provides that, "[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter, the court may[,] on application[,] enter judgment if the right of the applicant thereto is clear." *Id.* "Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Royal v. Se. Pa. Transp. Auth.*, 10 A.3d 927, 929 n.2 (Pa. Cmwlth. 2010). In considering whether to grant summary judgment, we review the record "in the light most favorable to the nonmoving party, but all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id.*

Similarly, "[a] motion for judgment on the pleadings is in the nature of a demurrer; all of the opposing party's allegations are viewed as true and only those facts which have been specifically admitted by him may be considered against him." *Dep't of Pub. Welfare v. Joyce*, 571 A.2d 536, 536 (Pa. Cmwlth. 1990). In reviewing a motion for judgment on the pleadings, the Court may "only consider the pleadings themselves and any documents properly attached thereto." *Id.* Judgment on the pleadings should only be granted when there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. *Summit Twp. Indus. & Econ. Dev. Auth. v. Cnty. of Erie*, 980 A.2d 191, 203 n.8 (Pa. Cmwlth. 2009).

### B. Parties' Arguments

Jackson argues that he is entitled to summary relief because, in his Amended Petition, he avers that "DOC is refusing to permit inmates from producing exculpatory witnesses from testifying under oath as required by DOC policy DC-ADM 801 and 37 Pa. Code § 93.10." (Jackson's Br. at 19.) Jackson characterizes the testimony given by Lieutenant Starzynski as false and asserts that Lieutenant Starzynski and the hearing examiner engaged in *ex parte* communications in violation of Jackson's due process rights. (*Id.* at 20.) Jackson further argues that, although Respondents' Answer unequivocally denied the material allegations and their averments in the New Matter were not tacit admissions of Jackson's allegations, the conclusions that can be drawn from the denials and averments establish the violation of his due process rights. (*Id.* at 22.) Jackson then sets forth paragraphs 3, 8, 9, 10, and 13 of Respondents' New Matter and explains how, in his view, each of these paragraphs supports his position that his due process rights were violated and that Respondents admitted that violation. (*Id.* at 22-26.) With respect to his due process claim based on the denial of his request to call Smith as a witness, Jackson argues that he has established he is entitled to judgment as a matter of law because this denial was arbitrary and capricious and prevented him from telling his story and presenting relevant evidence. (*Id.* at 27-28.) Jackson further argues that his due process rights were violated because he "received a hearing with a [biased] hearing examiner" based on his observation that the hearing examiner and Lieutenant Starzynski were talking prior to the hearing. (*Id.* at 30-31.) Jackson contends that these actions violated Section 93.10(b)(2)-(3) and Section 3(D) of DC-

8

ADM 801, and *Wolff v. McDonnell*, 418 U.S. 539 (1974). (*Id.* at 32.) Thus, Jackson argues that there are no material facts in dispute and those undisputed facts reflect that Jackson was denied due process, and he is, therefore, entitled to judgment in his favor and Respondents are not. (*Id.* at 33.)

Respondents argue that Jackson has failed to show that there is a lack of a genuine issue of material fact and that he is entitled to judgment as a matter of law. (Respondents' Br. at 15.) Respondents maintain that Jackson's "assertions that [] Respondents have failed to sufficiently deny his allegations and that Respondents[] have tacitly admitted several of his claims" are mischaracterizations of their responses. (*Id.*) Specifically, Respondents contend that Jackson mischaracterizes paragraphs 3, 8, 9, 10, and 13 of Respondents' New Matter and "twist[s] the text of those averments to conclude that Respondents have admitted his claims." (*Id.* (citing Jackson's Motion ¶¶ 6-10).) A fair reading of their averments, Respondents argue, belies Jackson's argument that Respondents admitted the allegations in their New Matter. According to Respondents, because this is the only basis upon which Jackson relies to support the grant of judgment on the pleadings, Jackson is not entitled to judgment as a matter of law. (*Id.* at 15-16.)

In support of their Motion for Summary Judgment, Respondents argue that they are entitled to summary relief because there are no genuine issues of fact in dispute and Jackson was afforded process that was due under *Wolff*, and Section 93.10 of DOC's regulations, 37 Pa. Code § 93.10, as reflected in the contemporaneous documentation. (*Id.* at 19.) Respondents explain that Jackson "received a hearing with an impartial hearing examiner; written notice of the charges well in advance of the hearing; an opportunity to [] call a witness, present his own written version of events[,] and present evidence at the hearing; and a written

9

explanation of the sanction decision." (*Id.* (citing *Wolff*, 418 U.S. at 559).) Further, Respondents assert that Jackson's request to call Smith was denied because the hearing examiner, acting within his discretion, determined that Smith's testimony was unnecessary because Jackson had already admitted to his role in the scheme during the investigation, which resulted in the issuance of the misconduct charge. (*Id.* at 20.) Because Jackson "presented no evidence, either tangible or testimonial, to support his contention that" not having Smith as a second witness violated his due process rights and DOC's regulations, particularly where Jackson did not explain what Smith's testimony would be or its relevancy beyond that Smith's name was on the envelope, Respondents argue there was no violation of due process by the hearing examiner. For these reasons, Respondents maintain they met their burden of proving a clear right to relief and are entitled to summary judgment. (*Id.* at 20-21.)

### C. Analysis

Jackson claims that, as a matter of law, he has established that he was denied due process at the misconduct hearing. Respondents assert that Jackson has not done so and that they have established that, as a matter of law, no due process violation occurred. In the context of prison misconduct hearings, due process requires that inmates charged with misconduct be provided: (1) a hearing by an impartial adjudicator; (2) written notice of the charges, provided at least 24 hours prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence in their defense, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance if the charged inmate is illiterate or if complex issues are involved; and (5) a written explanation of the decision. *Wolff*, 418 U.S. at

563-71.[5] However, inmates do not have an unlimited right to call witnesses. "[T]he fact that [inmates] retain rights . . . in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id.* at 556. Prison personnel must be given discretion in the administration of prison misconduct hearings. *Id.* at 566. When denying a request to call a witness, the United States Supreme Court in *Wolff* explained that "it would be useful for the [adjudicator] to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.*

DOC has its own regulations and policies governing misconducts and misconduct hearings. When inmates violate rules set forth by DOC, Section 1.A of DC-ADM 801[6] provides: "the violation shall be reported and disposed of either by an informal or formal process." Misconducts are defined as "[a]ny violation o[r] alleged violation of [DOC] rules, regulations, or policies." Glossary of Terms, DC-ADM 801. Misconducts are required "to be reported via a DC-141, Part 1, Misconduct Report." Section 1.B of DC-ADM 801. Inmates who are charged with a misconduct "shall receive a copy of the [DC-141]." *Id.* Section 3(D) of DC-ADM 801 provides that a hearing examiner may approve up to three relevant witnesses,

---

[5] We recently explained that there are "three components, at minimum, [that] must be present to satisfy an inmate's right to procedural due process" in disciplinary proceedings: (1) written notice of the violations in advance of the hearing; (2) a written statement by the hearing examiner explaining his decision; and (3) the ability for the inmate to call witnesses and present documentary evidence. *Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269, 1275 (Pa. Cmwlth. 2021).

[6] DOC Policy DC-ADM 801 appears on DOC's official website at: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/801%20Inmate%20Discipli ne.pdf (last visited July 20, 2022). We are cognizant, however, that DOC's DC-ADM Policies include "disclaimer" language reflecting that the policies do not create any rights in any person, which this Court has stated reflects that the policies do not create enforceable rights. *Weaver v. Pa. Dep't of Corr.*, 829 A.2d 750, 753 (Pa. Cmwlth. 2003).

11

including the charging staff member, "only if the testimony is needed to establish the guilt or innocence of the inmate." Section 3(D)(1), (2) of DC-ADM 801. In making a request, the inmate must state "why the witness is relevant to the hearing," and if the hearing examiner denies a request for a witness, the reasons for the denial shall be stated in writing. Section 3(D)(2) of DC-ADM 801. Additionally, DOC must follow the procedures outlined in its own regulation, 37 Pa. Code § 93.10(b),[7] and *Bush v. Veach*, 1 A.3d 981, 984 (Pa. Cmwlth. 2010), which mirror *Wolff*'s requirements.

---

[7] Section 93.10(b) relates to inmate discipline and provides:

(b) Written procedures which conform to established principles of law for inmate discipline including the following will be maintained by [DOC] and disseminated to the inmate population:

(1) Written notice of charges.

(2) Hearing before an impartial hearing examiner or an informal resolution process for charges specified by [DOC] in the *Department of Corrections Inmate Handbook*, or any [DOC] document that is disseminated to inmates. The informal resolution process is described in DC-ADM 801--Inmate Discipline. The process gives inmates the option to meet with staff to resolve a misconduct rather than proceed with a hearing.

(3) Opportunity for the inmate to tell his story and to present relevant evidence.

(4) Assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively.

(5) Written statement of the decision and reasoning of the hearing body, based upon the preponderance of the evidence.

(6) Opportunities to appeal the misconduct decision in accordance with procedures in the *Department of Corrections Inmate Handbook*.

37 Pa. Code § 93.10(b) (italics in original).

Of the *Wolff* requirements, Jackson argues that his due process rights were violated because his request to call Smith at his misconduct hearing was denied and the hearing examiner was biased. Jackson argues he is entitled to summary relief because Respondents admitted these allegations in their Answer and New Matter or these admissions can be inferred from Respondents' pleading. We disagree. A plain reading of Respondents' Answer and New Matter shows that they did not admit any of the Amended Petition's material allegations. Rather, Respondents denied the material allegations on the basis that they lacked sufficient information to respond or that the allegations constituted legal conclusions to which no response was required. These are not "general denials" that would result in the admission of an allegation. Pennsylvania Rule of Civil Procedure 1029(b)-(d), Pa.R.Civ.P. 1029(b)-(d). Further, the averments contained in the New Matter did not admit, either implicitly or explicitly, that Jackson's due process rights were violated, but more clearly set forth the factual and procedural history of the misconduct hearing and the process that Jackson was afforded during this time. Thus, the Court discerns no admissions in or inferences from Respondents' Answer and New Matter that support Jackson's claim that a due process violation occurred here. As Respondents' alleged admissions are the basis of Jackson's request for summary relief, Jackson has not met his burden of proving that it is clear and free from doubt that he is entitled to judgment as a matter of law. Therefore, Jackson's Motion for Judgment on the Pleadings is denied.

Respondents contend that they are entitled to summary judgment at this time because the record shows that Jackson received the process due under *Wolff*, DOC's regulations, and DOC's policies. After reviewing the Amended Petition, Answer

13

and New Matter, and documents before the Court, we agree that Jackson was afforded due process at the misconduct hearing in accordance with the law.

Jackson's main argument is that he was denied due process because Smith was not allowed to testify on his behalf, precluding Jackson from presenting relevant evidence and his side of the story. However, inmates in misconduct hearings are not entitled to "the same panoply of procedural rights afforded a criminal defendant." *Melton v. Beard*, 981 A.2d 361, 365 (Pa. Cmwlth. 2009). An inmate's rights are allowed to be restricted by "the nature of the regime to which they have been lawfully committed." *Wolff*, 418 U.S. at 556. Pursuant to DOC's regulations and Policy, an inmate is allowed to call relevant witnesses whose testimony is necessary to establish the guilt or innocence of the inmate. *See* 37 Pa. Code § 93.10(b); Section 3(D)(1), (2) of DC-ADM 801. Thus, an inmate's request for a witness may be denied, within the hearing examiner's discretion, where the witness's testimony is not necessary to decide the inmate's guilt or innocence. Here, Jackson admitted to participating in the unauthorized use of mail or telephone during the investigation, he further admitted that he "voluntarily plead[ed] guilty" to this charge at the misconduct hearing, and he admitted to having asked someone to forward the letter in question. (*See* Respondents' New Matter ¶¶ 5, 7; Jackson's Answer to Respondents' New Matter ¶¶ 5, 7.) Further, although Jackson describes in his brief a variety of ways Smith's testimony would have helped his defense, Jackson's explanation to the hearing examiner as to the relevancy of this testimony was simply that Smith's name was on the envelope. (*See* Amended Petition Ex. B; Respondents' Br. Ex. A at 7.) Because Jackson admits to participating in and pleaded guilty to the underlying rule violation, we cannot say that there was a violation of Jackson's due process rights when the hearing examiner denied the request to have Smith testify

about that rule violation based on the conclusion that Smith's testimony was not needed to determine Jackson's guilt or innocence.

We next address Jackson's claim that the hearing examiner was biased in contravention to DOC's regulations, policies, and *Wolff*. Jackson's claim of bias is based on his conclusory allegation that the hearing examiner had to be biased because Jackson observed Lieutenant Starzynski speaking with the hearing examiner prior to the hearing and the hearing examiner credited Lieutenant Starzynksi's testimony. In his brief, Jackson does not fully develop this argument, but, instead, makes several broad statements regarding the hearing examiner's alleged bias. (*See* Jackson's Br. At 20, 26, 30.) A petitioner must develop claims with citations to the record and relevant case law, and a failure to do so will result in waiver. *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009). Nonetheless, we note that, to the extent the hearing examiner credited Lieutenant Starzynski's testimony, Jackson admits that he voluntarily pleaded guilty to the unauthorized use of mail charge, which corroborated Lieutenant Starzynski's testimony that Jackson had participated in the violation. We do not view the crediting of corroborated testimony alone as reflecting bias, and the Court discerns no other allegations or evidence, beyond conclusory statements, that would show that the hearing examiner was biased. Accordingly, we cannot say that there was a violation of Jackson's due process rights based on the allegation of the hearing examiner's bias.

To summarize, although Jackson claims his due process rights were violated, we conclude, based on the materials before us, that Jackson was apprised of the charges against him more than 24 hours before the misconduct hearing, was able to testify himself and provide a written account of events, received a hearing before an impartial hearing examiner, received a written decision, and was able to engage in

15

an appeals process challenging that written decision. This is in accordance with *Wolff*, DOC's regulations, and DOC's policies. Therefore, Respondents have met their burden of proving that it is clear and free from doubt that there was no due process violation, and they are entitled to judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Jackson has not established a clear right to relief entitling him to summary relief in his favor. In contrast, Respondents have established their clear right to relief and are, therefore, entitled to judgment as a matter of law. Accordingly, Jackson's Motion for Judgment on the Pleadings is denied, and Respondents' Motion for Summary Judgment is granted.

_____
**RENÉE COHN JUBELIRER,** Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Com. ex rel. Omar Jackson,                  :
                    Petitioner              :
                                            :
            v.                              :    No.  47 M.D. 2017
                                            :
John E. Wetzel, Secretary                   :
Pennsylvania Department of                  :
Corrections, and Lawrence P.                :
Mahally, Superintendent, State             :
Correctional Institution at Dallas,         :
and Pennsylvania Department of              :
Corrections,                                :
                    Respondents             :

# **O R D E R**

    **NOW**, July 21, 2022, Omar Jackson's (Jackson) Motion for Judgment on the Pleadings is **DENIED**, and Respondents' Cross-Application for Summary Relief in the Form of a Motion for Summary Judgment is **GRANTED**.

_____
**RENÉE COHN JUBELIRER,** Judge