# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Norman Williams, Jr., | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania | : | |
| Department of Corrections, et al., | : | No. 120 M.D. 2024 |
| Respondents | : | Submitted: April 8, 2025 |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
HONORABLE MATTHEW S. WOLF, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COVEY                                              FILED:  May 6, 2025

Before this Court are the preliminary objections (Preliminary Objections) filed by the Commonwealth of Pennsylvania (Commonwealth), Department of Corrections (DOC), State Correctional Institution (SCI)-Somerset's Superintendent Eric Tice (Tice), DOC's Fiscal Management Specialist Leann Bisick (Bisick), DOC's Business Manager/Business Office Supervisor Susan Will (Will), SCI-Somerset's Chief Grievance Officer (GO) Dorina Varner (Varner), and SCI-Somerset's Assistant Chief GO Keri Moore (Moore) (collectively, Respondents) to Norman Williams, Jr.'s (Petitioner) pro se Petition for Review in the nature of a Complaint (Petition).  After review, this Court sustains Respondents' Preliminary Objections and dismisses the Petition.

Petitioner was, at all relevant times, incarcerated at SCI-Somerset.[1] *See* Petition ¶ 7. On November 12, 2021, Petitioner received three separate notifications with accompanying sentencing Clerk of Courts documentation from the Business Office located at SCI-Laurel Highlands, informing him that he owed a combination of fines, costs, restitution, and Crime Victim Compensation/Victim's Services Fund (CVCF) Fees totaling $11,830.74 for case no. CP-22-CR-0001173-2004, $997.78 for case no. CP-22-CR-0001174-2004, and $659.24 for case no. CP-22-CR-0001097-2004 (collectively, Notifications). *See* Petition ¶¶ 8-9. The Notifications stated that DOC would begin making deductions from Petitioner's inmate account to satisfy the financial obligations in accordance with Section 9728(b)(5) of the Sentencing Code, 42 Pa.C.S. § 9728(b)(5) (commonly referred to as Act 84) and DC-ADM 005 (entitled Collection of Inmate Debts), and that the deducted funds would be forwarded appropriately. *See* Petition ¶ 10; *see also* Ex. A. The Notifications also apprised Petitioner that in order to contest the accuracy of the attached documentation, he must file a grievance in accordance with DC-ADM 804 (entitled Inmate Grievance System) within 15 working days. *See* Petition ¶ 11; *see also* Ex. A. The Notifications further apprised Petitioner that if he did not file a grievance, he would be deemed to have not contested the accuracy of the documentation supplied by the Clerk of Courts, and deductions would commence in 15 working days from the date of the Notifications. *See* Petition ¶ 12; *see also* Petition Ex. (Ex.) A.

Although Petitioner received the Notifications on November 12, 2021, they were dated November 5, 2021. *See* Petition ¶ 13; *see also* Ex. A. Calculating from November 5, 2021, Petitioner's deadline to file a grievance would have been

---

[1] Petitioner is currently incarcerated at SCI-Greene. *See* https://inmatelocator.cor.pa.gov/#/Result (last visited May 5, 2025).

November 29, 2021. *See* Petition ¶ 14. Petitioner timely filed his grievance (#956289) in accordance with DC-ADM 804 on November 23, 2021, and the Facility Grievance Coordinator stamped it received on November 29, 2021. *See* Petition ¶ 14. On November 30, 2021, DOC deducted an initial $60.00 for each CVCF from Petitioner's inmate account. *See* Ex. C at 4, 7.

Bisick was the appointed GO for Petitioner's timely filed grievance, and she denied that Petitioner contested the accuracy of the financial obligations contained within the Notifications. *See* Petition ¶ 18. Bisick's December 9, 2021 Initial Review Response to grievance #956289 did not include any statement denying Petitioner's failure to contest the accuracy of the Clerk of Courts documents in question. *See id.*; *see also* Ex. B. However, it did include a response to Petitioner's reason for his contest and a rationale for the denial. *See* Ex. B at 5. Petitioner received a Final Appeal Response to grievance #956289 on April 7, 2022, which is when it would have been lawful, pursuant to DC-ADM 005, for Respondents to authorize, approve, or uphold deductions to his inmate account under Act 84. *See id.*

In the Final Appeal Response, Moore, on behalf of Varner, conceded that Petitioner was correct that the deductions were prematurely made from his account. *See* Petition ¶ 25. Moore further stated therein that the money would not be returned as Petitioner owed it. *See id.* Moore upheld Petitioner's grievance #956289 in part and denied it in part, but completely denied relief, even though Moore conceded that Petitioner's funds were erroneously and prematurely deducted from his inmate account. *See id.*; see also Ex. C. Tice, having been notified of the procedures being executed by Bisick and Will,[2] stated that Bisick verified that the

[2] Will was Bisick's superior at all relevant times. *See* Petition ¶ 21.

deductions were in accordance with DOC policy and the law. *See* Petition ¶ 26; *see also* Exs. B, C.

On July 6, 2023, Petitioner filed a pro se Complaint in the Somerset County Common Pleas Court (Common Pleas). On July 7, 2023, Common Pleas granted Petitioner In Forma Pauperis status. Thereafter, Respondents filed preliminary objections to Petitioner's Complaint. In response thereto, Petitioner filed a Motion for Permission to Amend Civil Complaint (Motion), attached to which he included a Second Amended Complaint. On February 7, 2024, Common Pleas sustained Respondent's preliminary objections in part, directed Petitioner to file the Second Amended Complaint[3] attached to his Motion within 20 days of the date of Common Pleas' order, and directed the Somerset County Prothonotary to transfer the matter to this Court. By February 16, 2024 letter, Common Pleas transferred the matter to this Court.

By March 21, 2024 Order (Order), this Court directed that Petitioner's Second Amended Complaint shall be treated as a petition for review addressed to this Court's original jurisdiction.[4] *See* Section 761 of the Judicial Code, 42 Pa.C.S. § 761; Pennsylvania Rule of Appellate Procedure 1502, Pa.R.A.P. 1502. The Order further directed Respondents to file an answer or other responsive pleading on or

---

[3] Although Petitioner titled it as a second amended complaint, it was his first amended complaint.

[4] In the Petition, Petitioner seeks: (1) a declaration that the named Respondents, jointly, individually, or severally violated the United States Constitution, state and federal laws, statutes and policies as Petitioner alleged therein; (2) a judgment entered in favor of Petitioner and against all Respondents jointly, individually, or severally; (3) an award for compensatory damages in the amount of $180,000.00 against Respondents jointly, individually, or severally; (4) an award for exemplary/punitive damages to Petitioner, and against all Respondents jointly, individually, or severally; (5) an award for filing costs, court costs, and fees/litigation costs to Petitioner; (6) a judgment entered for any other relief this Court may find just and appropriate; and (7) an order compelling Respondents and/or their employers to return all monies deducted from Petitioner's inmate account from November 30, 2021, up to the time of this Court's ruling. *See* Petition Ad Damnum Clause.

before April 22, 2024, which they did on April 7, 2024 (Response). On April 12, 2024, Respondents filed the Preliminary Objections in the nature of a demurrer, alleging: (1) Petitioner's due process claim related to the alleged miscalculation of the time period for filing a grievance fails to state a valid legal claim; (2) Petitioner fails to state a constitutional claim against Tice, Moore, and Varner because Petitioner has failed to allege they were personally involved in the decision to deduct funds from his account; (3) Petitioner's underlying complaint in his grievance - that his sentence and the underlying costs associated therewith are invalid because DOC was unable to produce a signed sentencing order in response to Petitioner's Right-to-Know Law (RTKL)[5] request - fails to state a legally viable claim; and (4) alternatively, Petitioner cannot establish more than nominal compensatory damages,

---

[5] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104. Petitioner did not refer to the RTKL in his Petition; however, he attached the Initial Review Response for grievance #956289, wherein Bisick stated:

> Along with his grievance[,] [Petitioner] submitted a letter that he received from the [RTKL] Office stating that the sentencing order "did not exist". This [GO] personally called the [RTKL] Office and spoke to the office administrator. [This GO] sent the administrator a copy of the letter [Petitioner] submitted with his grievance[,] along with a copy of the official court document the Business Office received several weeks ago in regards to the costs that [Petitioner] owes.

> . . . . The response [Petitioner] received simply meant that at that time[,][] DOC did not have the documentation in [its] possession (which [it does] now). The response to [Petitioner] did NOT mean that charges do not exist at all. The attorney stated "if you have court documentation showing that [Petitioner] owes costs/fee/etc., then he owes them. That [RTKL] response [Petitioner] received has no bearing on that".

Ex. B.

5

and he is not entitled to punitive damages.

Initially,

[w]hen ruling on a demurrer, this Court must accept as true all well-pleaded allegations in the petition for review, including any inferences [this Court] can deduce from those allegations, but [this Court] need not accept any legal conclusions, unwarranted inferences, argumentative allegations, or opinions. *Giordano v. Ridge*, 737 A.2d 350, 352 (Pa. Cmwlth. 1999). Where documents or exhibits are attached to a petition for review, [this Court] may consider them; [this Court] need not accept as true any allegations in the petition for review which conflict with the documents or exhibits. *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014). If there is any doubt as to whether the law permits recovery, [this Court] resolve[s] it in favor of overruling the demurrer. *Id*.

*Seguro Medico, LLC v. Humphreys*, 313 A.3d 298, 303 n.3 (Pa. Cmwlth.), *aff'd*, 320 A.3d 1163 (Pa. 2024).

Respondents first argue that Petitioner's due process claim related to the alleged miscalculation of the time period for filing a grievance concerning his Act 84 deductions fails to state a claim for which relief could be granted. Respondents contend that the Pennsylvania Supreme Court has held that, when making Act 84 deductions, DOC must, prior to the first deduction: (a) inform the inmate of the total amount of his financial liability as reflected in his sentencing order, as well as DOC's policy concerning the rate at which funds will be deducted from his account and which funds are subject to deduction; and (b) give the inmate a reasonable opportunity to object to the application of DOC's policy to his account. *See Bundy v. Wetzel*, 184 A.3d 551 (Pa. 2018). Respondents assert that the Notifications attached to the Petition satisfy all of the above *Bundy* requirements and were provided to Petitioner prior to the first deduction from his account. Respondents maintain that, at most, Petitioner has pled a violation of DOC policy,

6

which is not enforceable by inmates. Petitioner rejoins that Respondents violated his due process rights by not affording him a meaningful opportunity to object to the application of DC-ADM 005 or to the Notifications before the deductions commenced.

The Pennsylvania Supreme Court has explained:

> [P]risoners are entitled, under the Due Process Clause of the Fourteenth Amendment,[6] to notice of certain items and a reasonable opportunity to object before the first Act 84 deduction is made. These items include [DOC's] Act 84 deduction policy, the prisoner's total monetary obligation to the Commonwealth, the rate at which funds will be deducted from his account, and the funds which will be subject to withdrawals. *See Bundy* . . . .

*Johnson v. Wetzel*, 238 A.3d 1172, 1182 (Pa. 2020).

Concerning the *Bundy* requirements, Petitioner alleged:

> 10. The above said Notifications sent to [Petitioner] on 11/12/[20]21 stated that "[DOC] will begin making deductions from your inmate account to satisfy the financial obligations in accordance with [Act 84] and DC-ADM 005 . . . , and that "all funds will be forwarded appropriately." (*See* Exhibit A)[.]
>
> 11. [Petitioner] was also informed on 11/12/[20]21 that, to contest the accuracy of the attached documentation, you must file a grievance in accordance wit[h] DC-ADM 804 . . . within 15 working days. "You must attach to your grievance Valid, Official Court documentation proving that[.]"[] (See Exhibit A, 1-10).

Petition ¶¶ 10-11.

---

[6] The Fourteenth Amendment of the United States Constitution provides, in relevant part: "No [s]tate . . . shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, § 1.

7

Exhibit A, which Petitioner attached to his Petition, included a copy of all three Notifications, each of which contained the following explanation:

> [DOC] will begin making deductions from your inmate account to satisfy the financial obligations in accordance with [Act 84] and DC-ADM 005 . . . .[] All deducted funds will be forwarded appropriately.
>
> Under DC-ADM 005, provided that you have at least $10[.00] in your inmate account, your inmate account will be subject to an initial deduction to pay the entire amount of your [CVCF] fees, and an additional 25% of the remaining funds in your account may also be deducted. Thereafter, all incoming funds (except those specifically noted in DC[-]ADM 005) will be subject to a deduction, provided that you have at least $10[.00] in your inmate account. 50% of incoming funds will be deducted to pay any remaining balance for the [CVCF] fees. When the [CVCF] fees are paid in full, then the deductions will be reduced to 25% and applied to any additional debts associated with your sentence. These deductions will continue until you have paid off your outstanding financial obligations.

Ex. A at 1, 3, 5.[7] Each Notification also included a breakdown of the "Act 84" costs and the "CVCF" fees, as well as an "Itemized Account of Fines, Costs, Fees, and Restitution." Ex. A at 1-6. Finally, each Notification advised:

> To contest the accuracy of the attached documentation, you must file a grievance in accordance with DC-ADM 804 . . . within 15 working days. You must attach to your grievance valid, official court documentation proving that:
>
> (1) You previously paid the financial obligation;
>
> (2) The information submitted on the official court documents by the Clerk of Courts was incorrect;
>
> (3) For a sentencing occurring prior to December 26, 2010, the sentencing judge did not impose court costs;

_____

[7] Because the pages of Exhibit A are not numbered, this Court references them based on consecutive pagination.

8

(4) For a sentencing occurring on or after December 26, 2010, the sentencing judge specifically waived court costs;

(5) In the case of an obligation for restitution, reparation, fines or penalties, the sentencing court did not specifically order you to pay such obligation regardless of the date of sentence;

(6) A more recent court order removed or postponed the financial obligations;

(7) The financial obligations are not currently due under the terms of the court order;

(8) The [CVCF] was not computed in accordance with law;

(9) The court costs are related to an adjudication of delinquency, and you have attained the age of 21. If you are not yet 21, and are paying these fees, you should notify the business office on your 21st birthday; or

(10) You do not owe the financial obligations for any other reason.

If you do not file a grievance, you will be deemed to have not contested the accuracy of the documentation supplied by the Clerk of Courts and deductions from your account will commence 15 working days from the date of this notice.

Ex. A at 1, 3, 5. Indeed, Petitioner availed himself of the grievance procedure contained in the Notifications.

Accepting the allegations in the Petition as true, as this Court must, Petitioner received the Notifications on November 12, 2021, and he filed his grievance on November 23, 2021 (although DOC did not time-stamp it received until November 29, 2021). On November 30, 2021, DOC commenced the deductions. The Initial Review Response was not issued until December 9, 2021. Thus, at the time Respondents became aware that Petitioner was contesting the deductions, they were contemporaneously made aware that Petitioner's claim that he did not owe the

9

money being deducted was not meritorious. That Petitioner's grievance was not reviewed until after the first deductions were made from his account and he did not receive the Final Appeal Response acknowledgement until April 7, 2022, does not change the fact that DOC afforded him all of the applicable *Bundy* due process to which he was entitled at least 15 days before the deductions began, and Petitioner did avail himself of the grievance process. *See Johnson*. Because the Notifications attached to the Petition satisfied all of the above *Bundy* requirements, and DOC provided them to Petitioner prior to the first deduction from his account, Petitioner cannot make out a valid due process violation claim. Accordingly, Respondents' first Preliminary Objection is sustained.[8]

Respondents next argue that Petitioner fails to state a valid constitutional claim against Tice, Moore, and Varner because he did not allege in the Petition that they were personally involved in DOC's decision to deduct funds from his account. Petitioner rejoins that Tice, Moore, and Varner were personally involved in depriving him of his due process because they were on notice that Petitioner contested the deductions, yet did not stop them. Specifically, in the April 7, 2022 Final Appeal Response, Varner concluded:

> This office finds that, while premature, the money was appropriately deducted from your account. You appealed

---

[8] To the extent that Petitioner is claiming a violation of DC-ADM 005's requirement that "upon expiration of the 15 working day grievance period or resolution of any grievance filed, including any appeals, the total amount to be deducted from an inmate's account may be changed to reflect the increased amount[,]" htpps://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/005%20Collection%20of%20Inmate%20Debts.pdf (Section 3(A)(4)(d)) (last visited May 5, 2025), this Court recognizes that DOC's DC-ADM policies include "disclaimer" language reflecting that the policies do not create any rights in any person, which this Court has stated reflects that the policies do not create enforceable rights. *Weaver v. Pa. Dep't of Corr.*, 829 A.2d 750, 753 (Pa. Cmwlth. 2003). "To the extent that the policy language is dispositive, . . . the disclaimer is sufficient to dispel any reasonable expectation that an enforceable right is created by the DOC policy." *Id.*

10

the Collection of Inmate Debt memo[]s[/Notifications] you received in grievance [#]956289 in which it was found that you do owe the money in question. Therefore, while you are correct that the money was prematurely deducted from your account, the money will not be returned as you do owe it. Based on the above, this office finds your appeal is upheld in part as the deductions were started premature; however, it is denied in part as you do owe the money and your requested relief is unwarranted.[9]

Ex. C at 8.

Here, at the time the individual Respondents became aware that Petitioner was contesting the deductions, they were contemporaneously made aware that Petitioner's claim that he did not owe the money being deducted was not meritorious. Thus, the individual Respondents' knowledge and/or admissions that the money was deducted before Petitioner's contest was known, did not require any further action other than to deny the grievance.

Moreover, this Court has explained:

Prison officials whose only roles involved the denial of the prisoner's administrative grievances cannot be held liable under Section 1983 [of the Civil Rights Act, 42 U.S.C. § 1983]. *Shick v. Wetzel* (Pa. Cmwlth.[] No. 583 M.D. 2016, filed Sept. 10, 2018), slip op. at 5 . . . (unreported)[10] ("[P]risoners have no constitutionally-protected right to a grievance procedure and participation in after-the-fact review of a grievance or appeal is not enough to establish personal involvement for purposes of [Section] 1983."); *Martin v. Giroux* (Pa. Cmwlth.[] No. 1934 C.D. 2016, filed May 26, 2017), slip op. at 8 . . . (unreported). *See also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("**Ruling against a prisoner on an administrative**

---

[9] Petitioner's requested relief included return of the money, notification to the Pennsylvania State Police of the theft if the money was not returned, and $180,000.00 in compensatory and punitive damages. *See* Complaint Ex. C at 8.

[10] Per Section 414(a) of the Internal Operating Procedures of the Commonwealth Court of Pennsylvania, 210 Pa. Code § 69.414(a), unreported Commonwealth Court opinions issued after January 15, 2008, may be cited for their persuasive value.

> **complaint does not cause or contribute to the violation**"); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials whose only roles involved the denial of the prisoner's administrative grievances cannot be held liable under Section 1983).

*Rivera v. Silbaugh*, 240 A.3d 229, 237 (Pa. Cmwlth. 2020) (emphasis added). Because Petitioner's sole allegations against Tice, Moore, and Varner are based wholly on their participation in the grievance process, this Court concludes that dismissal of the Petition as against them is warranted on this ground alone.[11] Accordingly, Respondents' second Preliminary Objection is sustained.

Finally, Respondents argue that to the extent that Petitioner is attempting to state a legal claim based on the complaint in his grievance - that his sentence and the underlying costs associated with his sentence are invalid because DOC was unable to produce a signed sentencing order - he cannot do so. Respondents contend that there is no requirement that a sentencing order be signed, or even in writing. Respondents assert that Pennsylvania courts have upheld the validity of oral sentencing orders and have frequently turned aside arguments by inmates that their sentences were invalid because they were not reduced to writing.

Petitioner rejoins that he submitted proof that the deductions from his account were invalid. Specifically, he submitted DOC's RTKL response stating that the relevant sentencing orders do not exist and, therefore, DOC is not entitled to any deductions from his inmate account. In his RTKL request, Petitioner requested: "Please send me a copy of my Written Sentence of Judgement Order[,]" for the relevant docket numbers. Ex. B at 3. The RTKL response that Petitioner provided,

---

[11] Although Respondents did not specifically refer to Will, clearly all of the above applies to Will as well, even more so because Petitioner did not allege any personal involvement of Will in his Petition. Accordingly, dismissal of the Petition as against Will is warranted on this ground also.

12

in relevant part, stated: "The record(s) that you requested do not currently exist."

Ex. B at 4. However, Bisick stated in her Grievance Denial:

> Along with his grievance [Petitioner] submitted a letter that he received from the [RTKL] Office stating that the sentencing order "did not exist[.]" This [GO] personally called the [RTKL] Office and spoke to the office administrator. [This GO] sent the administrator a copy of the letter [Petitioner] submitted with his grievance[,] along with a copy of the official court document the Business Office received several weeks ago in regards to the costs that [Petitioner]owes.
>
> This [GO] then received an email from an attorney at the Office of Chief Counsel (which is attached to the admin [sic] copy of this grievance response) stating that [Petitioner] has misunderstood the [sic] what the office was telling him when [it] replied that the sentencing order "does not exist[.]" The response [Petitioner] received simply meant that at that time[,][] DOC did not have the documentation in [its] possession (which [it] do[es] now). The response to [Petitioner] did NOT mean that charges do not exist at all. The attorney stated "if you have court documentation showing that [Petitioner] owes costs/fee[s]/etc., then he owes them. That [RTKL] response [Petitioner] received has no bearing on that[.]

Ex. B at 5.

Petitioner appealed therefrom and, in his appeal denial, Tice stated in pertinent part:

> In review, I have determined that the GO provided you with a thorough investigation of your concerns. I have deemed this investigation to be satisfactory. The investigation included a review of your current court ordered fines, costs and deductions related to the identified docket. The GO also contacted the [RTKL] administrator and the Office of Chief Counsel, who collectively agree that you are misinterpreting the court[']s order. The [RTKL] response meant to say that the sentencing orders were not available; however, they have since been

13

> obtained.  All deductions have been deemed to be within the court[']s orders.

Ex. B at 7.  Given the above, it is clear that the response to Petitioner's RTKL request is not proof that the Act 84 deductions from his inmate account are not valid and, thus, Petitioner failed to present a viable legal claim based thereon.  Accordingly, Respondents' third Preliminary Objection is sustained.

For all of the above reasons, Respondents' Preliminary Objections are sustained and Petitioner's Petition is dismissed.

_____
ANNE E. COVEY, Judge

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Norman Williams, Jr., | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania | : | |
| Department of Corrections, et al., | : | No. 120 M.D. 2024 |
| Respondents | : | |

## O R D E R

AND NOW, this 6th day of May, 2025, the Preliminary Objections filed by the Commonwealth of Pennsylvania, Department of Corrections (DOC), State Correctional Institution (SCI)-Somerset's Superintendent Eric Tice, DOC's Fiscal Management Specialist Leann Bisick, DOC's Business Manager/Business Office Supervisor Susan Will, SCI-Somerset's Chief Grievance Officer (GO) Dorina Varner, and SCI-Somerset's Assistant Chief GO Keri Moore to Norman Williams, Jr.'s pro se Petition for Review in the nature of a Complaint (Petition) are SUSTAINED, and the Petition is DISMISSED.

_____
ANNE E. COVEY, Judge